## PAUL BROWN CLARK *v.* STATE OF MARYLAND

[No. 55, September Term, 1967.]

*Decided January 29, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Robert Gordon King* and *Louis Peregoff* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel Green, State's Attorney for Baltimore County,* and *Thomas L. Hennessey, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

On January 11, 1967, the court sitting without a jury found appellant guilty generally under two separate indictments charging arson, attempted arson, housebreaking with intent to commit a felony, housebreaking with intent to steal goods of $100.00 or more, and housebreaking with intent to steal goods under the value of $100.00. He was sentenced to a term of five years imprisonment on the arson convictions, and sentence was generally suspended on the housebreaking counts. Appellant's principal contention on this appeal is that the lower court erred in admitting in evidence the testimony of a police officer obtained by eavesdropping on an extension telephone, since such evidence was secured without appellant's permission, and in violation of the provisions of the Maryland Wire Tapping Act, Chapter 116 of the Acts of 1956, now codified as Sections 92-99 of Article 35 of the Annotated Code of Maryland (1965 Repl. Vol.).

The evidence adduced at the trial showed that on September 14, 1966, the dwelling house owned by Ronald Wheeler and his wife, Judith, was broken into and set afire. Mrs. Wheeler testified that for some months prior to the fire she had been involved romantically with the appellant. Believing that he was responsible for the crimes, she contacted appellant by phone on four occasions in an effort to have him admit his guilt. Three of these telephone conversations, made between September 29 and October 6, were monitored by Corporal Francis Hudson of the Baltimore County Police, who listened on a regularly installed extension phone in the Wheeler residence, with the Wheelers' permission, but without appellant's knowledge. Hudson testified at the trial, over appellant's objection, that during these conversations appellant admitted his complicity in the crimes.

We cannot agree that Hudson's testimony was inadmissible on the ground that it was obtained in violation of the Maryland Wire Tapping Act. That Act, which became effective on June 1, 1956, added a new subtitle to the Maryland Code entitled "Wire-Tapping," its purpose, according to its title, being to prohibit, *inter alia,* "the obtaining or tapping of telephonic or telegraphic communications without consent" and, further, to prohibit the use of evidence "obtained as a result of the inter-

ception of telephonic or telegraphic communications" unless secured in conformity with the provisions of the Act. The Act provides, in Section 92, that "The right of the people to be secure against unreasonable interception of telephonic and telegraphic communications shall not be violated," and that, except where authorized by court order, "the interception and divulgence of a private communication by any person not a party thereto is contrary to the public policy of this State." Section 93 (a) provides, in part, that no person shall:

> "(1) Obtain or attempt to obtain the whole or any part of a telephonic or telegraphic communication to which such person is not a participant by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, unless consent is given by the participants.
>
> "(2) Tamper with the wires, connections, boxes, fuses, circuits, lines or other equipment or facilities of a telephone or telegraph company over which messages are transmitted with the intent to obtain unlawfully the contents of a telephonic or telegraphic communication to which such person is not a participant."

Section 94 provides for the issuance of court orders authorizing "the interception of telephonic and telegraphic communications." Section 97 provides, in effect, that evidence obtained in violation of the Act shall not be admissible in evidence, and Section 99 declares it a misdemeanor to violate any of the provisions of the Act.

While, as heretofore indicated, the Act is commonly referred to as the Maryland Wire Tapping Act, and the Legislature provided for its inclusion in the Maryland Code under a newly created subtitle which it designated "Wire Tapping," and the Act refers to "interceptions" of telephonic messages, it clearly proscribes more than the mere interception of telephonic communications by conventional wire tapping methods; by its express terms, it prohibits the "obtaining" of such a communication "by means of any device, contrivance, machine, or appara-

tus * * * unless consent is given by the participants." [1] That an extension telephone could be deemed to constitute a device for "intercepting" or "obtaining" a telephonic communication without the consent of all the participants is entirely clear. See *Commonwealth v. Murray,* 223 A. 2d 102 (Pa.). But the relevant inquiry is whether the Legislature intended such a result; and although it is generally true that the Legislature should be understood to intend what is plainly expressed in the language of the statute, *Slagle v. State,* 243 Md. 435, it is also true, as stated in *Maguire v. State,* 192 Md. 615, at page 623, that "Adherence to the meaning of words does not require or permit isolation of words from their context * * * (since) the meaning of the plainest words in a statute may be controlled by the context." Thus, in order to ascertain the legislative intention where, as here, the exact reach or breadth of the statute lies in doubt, we must construe it as a whole, considering all parts together, with the legislative intention gathered from the entire statute, rather than from only one part thereof. See *Shub v. Simpson,* 196 Md. 177; *Powell v. State,* 179 Md. 399. In other words, in such circumstances as are here present, we must consider not only the literal or usual meaning of words, but their meaning and effect considered in the light of the setting, the objectives and purposes of the enactment, with the legislative intent prevailing over literal intent. *Truitt v. Board of Public Works,* 243 Md. 375; *Height v. State,* 225 Md. 251; *McKeon v. State,* 211 Md. 437; *Barnes v. State,* 186 Md. 287. In determining the scope of the Act's provisions, therefore, and particularly Section 93(a)(1), we consider briefly the state of the law pertaining to wire tapping and eavesdropping as it existed at the time of the Act's passage in 1956.

In *Olmstead v. United States,* 277 U. S. 438, decided in 1928, the Supreme Court held that the search and seizure provisions of the Fourth Amendment did not prohibit the use of evidence of private conversations intercepted by means of wire tapping, so long as there was no physical trespass on premises owned

---

1. In its generally understood sense, a wire tap is a physical connection with a communications system at a point between the sender and receiver of a message.

by or under the control of the accused. The court there noted that while there was no constitutional impediment to wire tapping, the Congress could, by statute, protect the secrecy of telephone messages by making them, when intercepted, inadmissible in evidence in federal criminal trials. By Section 605 of the Federal Communications Act, passed in 1934 (47 U.S.C.A. § 605), Congress provided, in pertinent part, that "no person not authorized by the sender shall intercept any communication and divulge or publish existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." [2] In *Goldman v. United States*, 316 U. S. 129, decided in 1942, the Supreme Court held, at page 134, that to constitute an "interception" of a telephonic communication within the meaning of the Federal Communications Act, there must be a "taking or seizure by the way or before arrival at the destined place," and that the term "does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver." The court in *Goldman* concluded that the overhearing of a phone conversation by means of a detectaphone placed against a wall in an adjoining room did not constitute such an interception as was within the coverage of the federal Act. In *Schwartz v. Texas*, 344 U. S. 199, decided in 1952, the Supreme Court held that the federal prohibition of unauthorized interception of telephone communications did not render evidence obtained in violation thereof inadmissible in a State criminal trial. In its 1956 report to the General Assembly of Maryland, the Legislative Council of Maryland observed that there was no existing state regulation of wire tapping and that evidence so obtained was admissible in trials of criminal cases in Maryland. It urged enactment of a strict law regulating wire tapping (see *Manger v. State*, 214 Md. 71) and, as previously indicated, the Maryland Wire Tapping Act was passed in that year and has not since been amended.

---

2. The Act was held to apply to intrastate as well as interstate transmissions in *Weiss v. United States*, 308 U. S. 321 (1939).

Viewed in the light of the background against which it was enacted, it would seem that the legislation was designed to prohibit wire tapping and the use of devices of a character such as that used in *Goldman*—with the broader phraseology in the Act proscribing the "obtaining" of telephonic communications by "any device * * *," being utilized to overcome the technical limitations placed upon the word "interception," when used in connection with wire tapping and telephonic eavesdropping statutes.

In *Rathbun v. United States,* 355 U. S. 107, decided in 1957, the Supreme Court held that listening to a telephone call by police on an extension telephone, not installed for that purpose, done at the request of the recipient of the call, did not constitute the "interception" of a telephonic communication within the condemnation of Section 605 of the Federal Communications Act. More specifically, the court held at pages 109-111:

> "The telephone extension is a widely used instrument of home and office, yet with nothing to evidence congressional intent, petitioner argues that Congress meant to place a severe restriction on its ordinary use by subscribers, denying them the right to allow a family member, an employee, a trusted friend, or even the police to listen to a conversation to which a subscriber is a party * * *.
>
> * * *
>
> "The clear inference is that one entitled to receive the communication may use it for his own benefit or have another use it for him. The communication itself is not privileged, and one party may not force the other to secrecy merely by using a telephone. It has been conceded by those who believe the conduct here violates Sec. 605 that either party may record the conversation and publish it. The conduct of the party would differ in no way if instead of repeating the message he held out his handset so that another could hear out of it. We see no distinction between that sort of action and permitting an outsider to use an extension telephone for the same purpose.
>
> * * *

"Common experience tells us that a call to a particular telephone number may cause the bell to ring in more than one ordinarily used instrument. Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. When such takes place there has been no violation of any privacy of which the parties may complain. Consequently, one element of Sec. 605, *interception,* has not occurred."

In *Robert v. State,* 220 Md. 159, decided in 1959, the Court of Appeals held that while the Maryland Wire Tapping Act was based upon the same general policy as Section 605 of the Federal Communications Act, the two Acts differed in material respects; that the Federal Act "is concerned with the interception and disclosure of telephonic (and telegraphic) communications" (p. 169); that it made "little difference whether the conduct proscribed by Section 93 (a) should be called an interception or not [since the] pertinent inquiry under Section 97 is whether the challenged evidence was obtained in conformity with or in contravention of, the provisions of the Wire Tapping Act * * *," (pp. 170-171); and that the terms of the Maryland statute "as to obtaining the contents of a telephonic communication" so differed from the language of the federal Act as to make inapplicable decisions of the Supreme Court interpreting the breadth of the federal Act, including *Rathbun v. United States, supra.*

In *Robert,* police officers, anticipating that the defendant would make a phone call to certain friends in a motel, positioned themselves at the motel's telephone switchboard. When the expected call came through the switchboard, the officers monitored it by means of a headset connected or hooked up through a press key to the switchboard. After observing that the officers could not be classified as participants in the conversation, and that they overheard it without the consent of *all* of the participants, as required by the Act, the court held that the headset used by the police was an electrical device, contrivance, or apparatus by which they obtained the telephone conversation

in contravention of the Act's provisions, rendering the evidence thereby obtained inadmissible in court.

While *Rathbun* is not direct or controlling authority in the present case, neither is *Robert,* since unlike the extension telephone here involved, the means there used to obtain the telephonic communication constituted, in effect, a prohibited device interposed on the telephonic circuit at a point between the sender and the receiver of the communication thus undermining the integrity of the communications system itself. Despite the fact that the Maryland Act and the federal Act differ in material respects, we think that the observations made by the Supreme Court in ascertaining Congressional intent in *Rathbun* are applicable here, *viz.,* we do not believe that the Legislature intended to place a severe restriction on the ordinary usage by subscribers of telephone extensions by denying the subscriber the right to allow a family member, an employee, a friend, or the police to listen to a conversation to which the subscriber is a party. Nor do we believe that the Legislature intended to make a criminal out of every person who would use a telephone extension under circumstances such as are here present, and we are particularly persuaded that the Legislature never intended such a complete and total prohibition on the populace generally, since only law enforcement officials would be authorized to obtain permission, by court order, to listen in on an extension telephone if Section 93(a) were interpreted to flatly proscribe such usage as appellant here seeks us to condemn.

In brief, therefore, we do not think that the Legislature intended to extend criminal liability to conduct which the Supreme Court characterized in *Rathbun* as "wholly innocent and ordinary." It is, of course, proper for the courts, in construing a statute of doubtful meaning and application, to consider the consequences of a proposed construction, so that results that are unreasonable or inconsistent with common sense would be avoided, whenever possible. *Height v. State, supra,* at page 259. We need not here decide the exact or precise reach of Section 93(a). We hold only that the admissibility in evidence of the contents of a communication overheard on a regularly used telephone extension is not controlled by the provisions of the Maryland Wire Tapping Act, since the Legis-

lature never intended that the use of such an extension telephone would be considered as a means for "intercepting" or "obtaining" a telephonic communication within the meaning of the Act, and particularly Section 93(a) thereof.[3]

Appellant next contends that the trial judge deprived him of a fair and impartial trial as evidenced by his statement, made when he ruled on appellant's motion for a new trial, that "There was no doubt in my mind after I heard the testimony of Judith Wheeler." While the proceedings on a motion for a new trial are not properly a part of the record before us in this case, we nevertheless hold that, at most, such a post trial statement indicated that after hearing Mrs. Wheeler's testimony, the judge believed that the State had made out a *prima facie* case, which was subsequently unrebutted by the defense. Compare *Holtman v. State,* 219 Md. 512, 518, holding a trial judge's statement in ruling on defendant's motion for a directed verdict of acquittal at the close of the State's case that "it is perfectly clear he [the defendant] was a participant in this burglary" to be merely a statement of his opinion that the State had made out a *prima facie* case.

Appellant further contends that it was improper for the court to convict him both of arson and attempted arson. We

---

3. Whether listening to a telephone call by police on an extension telephone at the request of the person who initiates the call, but without the knowledge of the recipient thereof, and without either a court order, or a search warrant, violates the search and seizure provisions of the Fourth Amendment, is a question not presently before us. We nevertheless observe that in *Katz v. United States,* 389 U. S. 347, decided December 18, 1967, the Supreme Court overruled both *Olmstead v. United States, supra,* and *Goldman v. United States, supra,* at least to the extent that those cases are no longer authority for the proposition that a conversation is not subject to Fourth Amendment protections where it was overheard by means not involving a physical trespass on constitutionally protected premises. In *Rathbun v. United States, supra,* the Supreme Court did hold, at page 111, that listening on an extension telephone with the consent of one of the parties to the conversation did not constitute a violation "of any privacy of which the parties may complain." *Katz* does not purport to overrule *Rathbun.* See also Sections 125A-D and 555B of Article 27 of the Maryland Code pertaining to telephonic eavesdropping.

agree. Having been convicted of arson, the appellant cannot be found to have failed to commit that offense, which is a necessary ingredient in the proof of the attempt. *Tender v. State,* 2 Md. App. 692; *Boone v. State,* 2 Md. App. 80. We shall, therefore, reverse the conviction on the count charging attempted arson. We must also reverse the conviction of housebreaking with intent to steal goods under the value of $100.00, since that conviction was inconsistent with the conviction for housebreaking with intent to steal goods over the value of $100.00. Additionally, we must vacate the conviction on the count charging housebreaking with intent to steal goods over the value of $100.00, as it merges with the conviction on the count charging housebreaking with intent to commit a felony under Section 30(b) of Article 27 of the Maryland Code (1967 Repl. Vol.) (said felony charged in such count being the intent to steal, take or carry away the personal goods of another of any value).

The sentence of five years imposed under the counts of the arson indictment did not exceed the maximum sentence which could have been imposed under the several counts of the two indictments, so that our reversal of the judgments charging attempted arson, and housebreaking with intent to stead goods of a value less than $100.00, and our vacating of the judgment under the count charging housebreaking with intent to steal goods over the value of $100.00, does not invalidate the general sentence imposed. See *Boone v. State, supra; Tender v. State, supra.*

> *Judgments affirmed as to the conviction of arson under Indictment No. 31317 and housebreaking with intent to commit a felony under the first count of Indictment No. 31316; judgments reversed as to the conviction for attempted arson under Indictment No. 31317, and housebreaking with intent to steal goods under the value of $100.00 under*

768

*Indictment No. 31316; judgment as to conviction of housebreaking with intent to steal goods of the value of $100.00, being the second count under Indictment No. 31316, vacated as merging into the conviction for housebreaking with intent to commit a felony, being the first count under Indictment No. 31316.*