517 A.2d 370

**STATE of Maryland**

v.

**Joseph Edward MADDOX.**

**No. 789, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Nov. 12, 1986.

Certiorari Denied March 23, 1987.

Valerie V. Cloutier, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen.), Baltimore, Walter P. Dorsey, State's Atty., for St. Mary's County and Joseph A. Mattingly, Jr., Asst. State's Atty., for St. Mary's County on the brief, Leonardtown, for appellant.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and WEANT and KARWACKI, JJ.

GILBERT, Chief Judge.

The State has appealed from an order of the Circuit Court for St. Mary's County suppressing what the court perceived to be an unlawful electronic interception of a telephone conversation between the appellee Joseph Edward Maddox and another person. The court also suppressed a handgun recovered from one of the parties to the "intercepted" phone call. We do not share the trial court's view, and for the reasons set forth *infra*, we reverse the suppression orders.

The facts from which this appeal arose may be briefly stated. Joseph Edward Maddox was suspected of having shot Larry Lee Woodland. After Maddox was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he allegedly confessed to having shot Woodland. He told the sheriff's deputies that he last saw the handgun when Mary Barnes put it into her purse. To assist the authorities in recovering the gun, Maddox telephoned Mrs. Barnes. The deputies listened to and simultaneously recorded, via table monitor, Maddox's conversation with Mrs. Barnes. Although Mrs. Barnes was not apprised that the conversation was being recorded, Maddox was fully aware of that fact. Because Mrs. Barnes did not know that the deputies recorded her conversation with Maddox, defense counsel moved to suppress the recordation. The trial court agreed with the defense that the statute required suppression, and this appeal ensued.

Md.Cts. & Jud.Proc.Code Ann. § 10–402 provides in pertinent part:

(a) *Unlawful acts.*—Except as otherwise specifically provided in this subtitle it is unlawful for any person to:

(1) Wilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire or oral communication;

(2) Wilfully disclose, or endeavor to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the informa-

tion was obtained through the interception of a wire or oral communication in violation of this subtitle; or

(3) Wilfully use, or endeavor to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subtitle.

. . . .

(c) *Lawful acts.—*

. . . .

(3) It is lawful under this subtitle for a person to intercept a wire or oral communication where the person is a party to the communication and where all of the parties to the communication have given prior consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act.

It is beyond question that the taping of Maddox's conversation with Mrs. Barnes was an electronic interception of the telephone call. Courts Art., § 10–401 provides, in pertinent part:

"As used in this subtitle, the following terms have the meanings indicated:

(1) 'Wire communication' means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of communications;

(2) 'Oral communication' means any conversation or words spoken to or by any person in private conversation;

(3) 'Intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device;

(4) 'Electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire or oral communication...."

On the strength of the pertinent parts of Cts. Art., §§ 10–401 and 10–402, as well as *Adams v. State*, 289 Md. 221, 424 A.2d 344 (1981), *aff'g* 43 Md.App. 528, 406 A.2d 637 (1979), the trial judge suppressed the tape, all evidence relative to the contents of the tape, and the weapon that was obtained as a result of the intercepted conversation. Although Cts. Art., §§ 10–401 and 10–402 facially appear to govern the situation presented by the peculiar facts of this case, closer examination reveals that they do not.

■ The Maryland Electronic Surveillance and Wiretap Law was designed with a two-fold purpose: 1) to be a useful tool in crime detection and 2) to assure that interception of private communications is limited. To make certain of the fulfillment of those objectives, the Legislature carefully restricted the circumstances in which a wire tap or electronic surveillence may be used. Cts.Art., §§ 10–401 through 10–413. The Court of Appeals has held that even the slightest deviation from the statute's proscribed course will not be tolerated. *State v. Siegel*, 266 Md. 256, 292 A.2d 86 (1972), *aff'g* 13 Md.App. 444, 285 A.2d 671 (1971). *See* R. Gilbert and C. Moylan, *Maryland Criminal Law: Practice and Procedure*, Ch. 43 (1983). *See also* Gilbert, *A Diagnosis, Dissection, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law*, 8 U.Balt.L.Rev. 183 (1979). If the Wiretap Electronic Surveillance Act were applicable to the instant case, the interception of the conversation between Maddox and Mrs. Barnes was illegal because she did not know her conversation with Maddox was being intercepted. Cts. Art., § 10–402(c)(3). If Mrs.

Barnes were a defendant, the statute would protect her; but she was not a defendant.

■ We think Courts Art., § 10–402(c)(3) is inapplicable to the recording in the matter *sub judice,* insofar as Maddox is concerned. He consented to the interception and recordation of his conversation with Mrs. Barnes. The protective umbrella that the Legislature raised over Mrs. Barnes and others who do not consent to the interception of their conversations affords Maddox no shelter. His portion of the conversation is admissible to the same extent as if it had been merely overheard, *Clark v. State,* 2 Md.App. 756, 765–66, 237 A.2d 768, 773, *cert. denied,* 250 Md. 731 (1968), 394 U.S. 1001, 89 S.Ct. 1597, 22 L.Ed.2d 779 (1969), or someone had permissibly listened to it on an extension phone, *Adams v. State,* 289 Md. 221, 424 A.2d 344 (1981), *aff'g,* 43 Md.App. 528, 406 A.2d 637 (1979).

In enacting Cts. Art., § 10–402(c)(3), the General Assembly sought to protect those who do not know their conversation is being electronically intercepted; it did not intend to allow an accused to consent to the surreptitious recording of his or her conversation with another party and later cause that recording to be suppressed on the ground that the other party to the conversation did not consent. That result would be ludicrous.

■ We hold, therefore, that when one party to a conversation expressly or implicitly consents to the recording of that conversation, the recording is admissible in evidence against the consenting party even though the other person or persons involved in the conversation were unaware of the interception. Under those circumstances the proscriptions embodied in the Courts Art., § 10–402 do not apply.

SUPPRESSION ORDERS REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS.

COSTS TO BE PAID BY APPELLEE.