*Rodney Lee Agnew v. State of Maryland*, No. 9, September Term 2018. Opinion by Hotten, J.

**CRIMINAL LAW – EVIDENCE – RECORDED CONVERSATIONS** – The Court of Appeals held that where a party to a conversation participates in or consents to the recording of that conversation, the Maryland Wiretap Act, Courts and Judicial Proceedings § 10-402, does not bar admission of that recording against the consenting party.

IN THE COURT OF APPEALS

OF MARYLAND

No. 9

September Term, 2018

_____

RODNEY LEE AGNEW

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
*Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: November 20, 2018

*Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

On June 17, 2016, Petitioner, Rodney Lee Agnew ("Agnew") was indicted by the Grand Jury for Montgomery County on charges of possession of a firearm during a drug trafficking crime, possession of a firearm after a disqualifying conviction, possession with intent to distribute heroin, possession with intent to distribute cocaine, conspiracy to possess with intent to distribute heroin, and conspiracy to possess with intent to distribute cocaine. At trial, the trial judge overruled an objection by Agnew to the admission of a recorded conversation recovered from his cell phone on the ground that it lacked two-party consent and was therefore inadmissible.[1] The trial judge entered a judgment of acquittal on both counts of conspiracy to possess with intent to distribute. Following the two-day trial, on November 16, 2016, Agnew was convicted of possession of a firearm after a disqualifying conviction, possession with intent to distribute heroin, and possession with intent to distribute cocaine and acquitted of possession of a firearm during a drug trafficking crime. On February 23, 2017, Agnew was sentenced to eight years of imprisonment on each count, to run concurrently.

Thereafter, Agnew noted a timely appeal to the Court of Special Appeals based on the alleged error in admitting the audio-recorded conversation. The Court of Special Appeals affirmed the judgment of the trial court in an unreported opinion on December 26, 2017. *Agnew v. State*, No. 2701, Sept. Term, 2016, 2017 WL 6611973 (Md. Ct. Spec. App. Dec. 26, 2017). Agnew sought this Court's review regarding whether a recorded

---

[1] The Maryland Wiretap Act, which generally prohibits the interception of any "wire, oral, or electronic communication," requires any lawful communication to have two-party consent prior to the interception of the communication. Maryland Code, Courts and Judicial Proceedings Article, § 10-402(c)(3).

communication on a cell phone between Agnew and an unidentified speaker was "intercepted" in violation of the Maryland Wiretap Act and erroneously admitted at trial.[2] For the reasons articulated below, we shall affirm the judgment of the Court of Special Appeals.

## BACKGROUND

In November 2015, members of the Montgomery County Police Department initiated an investigation into Agnew for suspicion of narcotics distribution. Members of law enforcement obtained and executed a valid search warrant for Agnew's apartment, where the following items were recovered: a bag of marijuana, a small pink wallet that contained a controlled dangerous substance, a silver iPhone, United States currency, a suitcase containing a loaded .32 caliber revolver and a black digital scale, a number of baggies containing a "white powder substance," a baggie with a green leafy substance, a bottle of creatine, sandwich bags, and another digital scale. The Montgomery County Police Crime Laboratory subsequently tested and identified the substances found as including marijuana, cocaine, heroin, and a combination of cocaine and heroin known as "speedball." Pursuant to the search warrant, law enforcement extracted data from the silver iPhone that included several text message communications and an audio recording of a phone conversation between Agnew and an unidentified person. The audio recording,

---

[2] Specifically, we granted *certiorari* on the following question: "Was a recorded communication on a [cell] phone between [Agnew] and an unidentified speaker intercepted in violation of the Maryland Wiretap Act and erroneously admitted at trial when there was no enumerated exception for its admissibility?"

2

which is the subject of this appeal, was taken with and stored on the silver iPhone's voice memo program.[3]

*The Trial*

The Grand Jury for Montgomery County indicted Agnew on June 17, 2016 and the trial commenced on November 14, 2016. At trial, the State introduced the audio-recorded voice memo extracted from Agnew's iPhone. After the playing of the entirety of the recording, Agnew objected to its admissibility at the bench, as reflected in the following colloquy:

> [DEFENSE COUNSEL]: Your Honor, there was no evidence that there was a consent by both people in the conversation. You hear the other person saying, I mean how that illegal act was taking place.
>
> THE COURT: Well, if it's illegal your client did it, didn't he?
>
> [DEFENSE COUNSEL]: I understand that but it doesn't make it admissible because it's illegal. You can't use illegally obtained material.
>
> [THE STATE]: If it were illegally obtained by the government then it wouldn't be able to be used, that's the Fourth Amendment which doesn't apply to [Agnew] and his illegal activities.
>
> [DEFENSE COUNSEL]: No, it comes up in domestic cases rather regularly when someone is surreptitiously recording and then tries to use it and it's not admissible because it's a surreptitious recording. There's no indication, first right off that I'm recording this because I want to know what you're doing and you know it's recorded. Here we don't have that.
>
> THE COURT: Well, if the State would try to use it and if the State intends to use it against the person on the other phone, undermine, whoever that is, then I would agree then that's illegal and you couldn't use it against whoever

---

[3] All iPhones are automatically equipped with a voice memo application. This program accesses the phone's built-in microphone and can be used to make recordings. These recordings can then be saved and stored within the voice memo program.

that other person is. But this is a recording that [Agnew] made and it's being used against the defendant so it should be admissible.

Thereafter, the trial court overruled Agnew's objection and admitted the recording into evidence. The State later replayed segments of the recording at trial. Detective Ryan Street testified as an expert in the areas of digital forensic examination of data recovery, narcotics trafficking, and narcotics dealing. Detective Street testified that the main voice on the recording belonged to Agnew, that the content of the conversation was "indicative of a drug deal," and that the conversation reflected that Agnew was aware that he could be arrested for transporting illegal drugs and was concerned about the risk of being stopped by the police.

On November 16, 2016, the jury found Agnew guilty of possession of a firearm by a prohibited person, possession with intent to distribute heroin, and possession with intent to distribute cocaine. The trial court sentenced him on February 23, 2017 to eight years of incarceration on each count, to run concurrently. Thereafter, Agnew noted a timely appeal to the Court of Special Appeals.

*The Court of Special Appeals*

Before the Court of Special Appeals, Agnew challenged, *inter alia*, the trial court's decision to admit the audio recording taken from the voice memo program on Agnew's iPhone. *See Agnew*, 2017 WL 6611973, at *1 (posing whether "the trial court err[ed] in admitting a communication, recorded on a cell phone, between [Agnew] and an unidentified speaker, which was intercepted in violation of the Maryland Wiretap Statute[.]"). Agnew argued that the Maryland Wiretap Act barred admission of the audio

4

recording "because there is no evidence that the unidentified speaker gave prior consent to the interception of the communication." *Id.* at \*7. Agnew asserted that the recording was an "unlawfully intercepted communication" and that no enumerated exception within the Wiretap Act applied. *Id.* at \*6 (footnote omitted). In contrast, the State argued that this issue was "not preserved for [the Court of Special Appeals'] review because [Agnew] did not timely object to the admission of the recording." *Id.* Even if preserved, the State contended that the trial court "correctly admitted a recording [Agnew] made of himself selling drugs." *Id.*

Finding that Agnew preserved the issue, the Court of Special Appeals affirmed the trial court's admission of the audio recording, determining that the "protective umbrella that the [General Assembly] raised over [third parties] and others who do not consent to the interception of their conversations affords [Agnew] no shelter." *Id.* at \*8 (quoting *State v. Maddox*, 69 Md. App. 296, 301, 517 A.2d 370, 372 (1986)). Reiterating its holding in *Maddox*, the Court of Special Appeals stated that "when one party to a conversation expressly or implicitly consents to the recording of that conversation, the recording is admissible in evidence against the consenting party even though the other person or persons involved in the conversation were unaware of the interception." *Agnew*, 2017 WL 6611973, at \*8 (quoting *Maddox*, 69 Md. App. at 301, 517 A.2d at 372). Because Agnew had recorded the conversation between himself and the unidentified person, he was a willing party to the surreptitious recording and was therefore not entitled to the protections afforded by the Wiretap Act.

5

Agnew filed a timely petition for *certiorari* to this Court, requesting that we consider whether the Maryland Wiretap Act bars the audio recording from admission, despite the fact that Agnew himself created the recording.

## STANDARD OF REVIEW

The interpretation of a statute is a question of law, which this Court considers *de novo*. *Harrison-Solomon v. State*, 442 Md. 254, 265, 112 A.3d 408, 415 (2015). The first step is "to examine the text. 'If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose,' our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction." *Id.* (citing *Lockshin v. Semsker*, 412 Md. 257, 275, 987 A.2d 18, 28-29 (2010)) (footnote omitted); *see also Mustafa v. State*, 323 Md. 65, 73, 591 A.2d 481, 485 (1991). If ambiguities are found, then "other indicia of legislative intent are consulted, including the relevant statute's legislative history, the context of the statute within the broader legislative scheme, and the relative rationality of competing constructions." *Harrison-Solomon*, 442 Md. at 265-66, 112 A.3d at 415 (citing *Witte v. Azarian*, 369 Md. 518, 525-26, 801 A.2d 160, 165 (2002)).

## DISCUSSION

*The Maryland Wiretap Act*

The Maryland Wiretap Act, codified in Title 10, Subtitle 4 of the Maryland Code, Courts and Judicial Proceedings (Cts. & Jud. Proc.), governs the interception and disclosure of "wire, oral, or electronic communications." Cts. & Jud. Proc. § 10-402(a) outlines the statute's general prohibitions, stating:

(a) Except as otherwise specifically provided in this subtitle it is unlawful for any person to:

    (1) Willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

    (2) Willfully disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle; or

    (3) Willfully use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle.

Electronic communications include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by wire, radio, electromagnetic, photoelectronic, or photooptical system[,]" while oral communications include "any conversation or words spoken to or by any person in a private conversation." Cts. & Jud. Proc. § 10-401(5)(i), (13)(i). The Wiretap Act requires the exclusion of any communications unlawfully intercepted in violation of § 10-402(a), stating:

> [W]henever any wire, oral, or electronic communication has been intercepted, no part of the contents of the communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of this State, or a political subdivision thereof if the disclosure of that information would be in violation of this subtitle.

Cts. & Jud. Proc. § 10-405(a). An "aggrieved person . . . may move to suppress the contents of any intercepted wire, oral, or electronic communication, or evidence derived therefrom, on the grounds that . . . the communication was unlawfully intercepted . . . ." Cts. Jud.

7

Proc. § 10-408(i)(1)(i). Cts. & Jud. Proc. § 10-401(1) defines an aggrieved person as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."

An intercepted communication may be admissible against a person where all "parties to the communication have given prior consent to the interception," or where one of the other ten enumerated exceptions apply. Cts. & Jud. Proc. 10-402(c)(3).[4]

*The Protections of the Wiretap Act Do Not Apply to Agnew*

We echo the purpose of the Wiretap Act articulated by the Court of Special Appeals in *Maddox v. State*. The Wiretap Act "was designed with a two-fold purpose: 1) to be a useful tool in crime detection and 2) to assure that interception of private communications is limited." *Maddox*, 69 Md. App at 300, 517 A.2d at 372. In a more recent decision, the Court of Special Appeals expounded on this articulation of the purpose, stating that "[t]he clear purpose of the Maryland Wiretap Act is to prohibit secret recordings of private oral communications, without regard to which device may be used to accomplish that task." *Holmes v. State*, 236 Md. App. 636, 653, 182 A.3d 341, 350 (2018). In light of this purpose, the Court of Special Appeals concluded that Holmes' surreptitious use of her own cellphone to record a face-to-face conversation with her child was a "presumptive violation of Maryland's wiretap law" and was, therefore, inadmissible against a non-consenting third party. *Id.*

---

[4] Agnew argues, and the State concedes, that none of these exceptions permits admission of the audio recording in the case before us.

In *Benford v. Am. Broadcasting Cos., Inc.*, American Broadcasting Companies, Inc. (ABC) surreptitiously recorded plaintiff George Benford while he gave a cancer insurance sales presentation to congressional representatives posing as prospective purchasers. 554 F.Supp. 145 (D. Md. 1982). This recording was subsequently broadcast on the ABC Nightly News, and was alleged to have caused Benford "grave" injury. *Id.* at 147. Benford claimed that the filming violated the Maryland Wiretap Act because it was taken without his knowledge or consent. *Id.* In interpreting the Maryland Wiretap Act, the United States District Court for the District of Maryland noted that "[o]ne of the clear purposes of the Maryland Act is to prevent, in non-criminal situations, the unauthorized interception of conversations where one of the parties has a reasonable expectation of privacy." *Id.* at 151. The court went on to conclude that Benford had a reasonable expectation of privacy in the communications because he "did not personally expect, nor did he intend, for his remarks to be intercepted[.]" *Id.* at 154.

The facts of *Maddox* are similar to the case at bar. Joseph Maddox confessed to law enforcement authorities that he shot a man named Larry Woodland. 69 Md. App at 298, 517 A.2d at 371. He admitted to having last seen the handgun he used when a woman named Mary Barnes put it into her purse. *Id.* To aid authorities in recovering the weapon, Maddox permitted law enforcement to listen and simultaneously record a conversation he had with Barnes over the telephone. *Id.* Barnes was unaware that law enforcement was recording the conversation and therefore, did not give her consent to its interception. *Id.* The State subsequently offered the recorded conversation into evidence against Maddox and Maddox objected, claiming that it was inadmissible against him because Barnes never

9

consented. *Id.* The hearing judge suppressed the evidence, concluding that it was inadmissible as an unlawfully intercepted communication in violation of the Wiretap Act. *Id.* However, the Court of Special Appeals reversed, holding that "when one party to a conversation expressly or implicitly consents to the recording of that conversation, the recording is admissible in evidence against the consenting party even though the other person or persons involved in the conversation were unaware of the interception." *Id.* at 301, 517 A.2d at 372. Therefore, while the recording would have been inadmissible if offered against Barnes, Maddox's consent prevented him from challenging the recording's admission against him. *Id.* at 300-01, 517 A.2d at 372 ("If Mrs. Barnes were a defendant, the statute would protect her; but she was not a defendant.").

As *Maddox* and *Benford* make clear, the protections afforded by the Wiretap Act offer shelter to those who do not consent to the interception of their private conversations, thereby maintaining a reasonable expectation of privacy in their conversations. 69 Md. App at 301, 517 A.2d at 372 (explaining that the "protective umbrella" of the Wiretap Act extends to those "who do not consent to the interception of their conversations . . ."). Prior holdings by this Court involving the Wiretap Act affirm this principle. In *Perry v. State*, the State attempted to introduce a 22-second recorded conversation between defendant James Perry and his co-conspirator. 357 Md. 37, 40, 741 A.2d 1162, 1164 (1999). Perry objected to its admission, stating that it was taken by Perry's co-conspirator, without Perry's consent. *Id.* at 46-47, 741 A.2d at 1167. The State countered that even if the interception was illegal, Perry was a co-conspirator and "that it was not the legislative intent for the statute to cover that situation." 357 Md. at 47, 741 A.2d at 1168. We rejected

10

this argument, holding that "there is no basis for concluding that an otherwise aggrieved person – in this instance one whose conversation is taped without his consent – loses his right to suppress the tape merely because the taping is done by a co-conspirator." *Id.* at 62, 741 A.2d at 1175 (citing *Maddox*, 69 Md. App. at 300-01, 517 A.2d at 372); *see also Mustafa v. State*, 323 Md. 65, 591 A.2d 481 (1991) (suppressing a recording that lacked one party's consent, thereby violating Maryland's two-party consent provisions, even though the recording was made in the District of Columbia which only requires single-party consent); *Wood v. State*, 290 Md. 579, 584, 431 A.2d 93, 95 (1981) (holding that an electronic recording of disputed conversations between the defendant and another person, when the latter did not consent to its interception, was inadmissible against the non-consenting party for impeachment purposes). However, we explicitly left open the question of whether a recorded communication is admissible against the interceptor. *Perry*, 357 Md. at 61, 741 A.2d at 1175 (declining to determine "whether one who unlawfully tapes a conversation can seek the protection of the exclusionary rule embodied in the Maryland statute. . .").

Agnew asserts that the audio recording was unlawfully intercepted because there is no evidence that the unidentified person in the recording consented to Agnew's recording of the conversation. Agnew argues that it is irrelevant that he gave consent by recording the conversation himself because the unidentified person did not consent and therefore, the requirement that all parties to the communication give consent prior to the interception pursuant to Cts. & Jud. Proc. § 10-402(c)(3) had not been satisfied. Agnew attempts to differentiate his case from *Maddox* by pointing out that Maddox explicitly permitted law

11

enforcement to listen and record his conversation with Barnes, while Agnew "never relinquished his privacy interest in the communication because there is no evidence that he ever shared it with anyone else."

The purpose of the Wiretap Act makes clear, and as the Court of Special Appeals stated in *Maddox*, the Wiretap Act's "protective umbrella" was not intended to extend to Agnew under the scenario before us.

> In enacting [the Maryland Wiretap Act], the General Assembly sought to protect those who do not know their conversation is being electronically intercepted; it did not intend to allow an accused to consent to the surreptitious recording of his or her conversation with another party and later cause that recording to be suppressed on the ground that the other party to the conversation did not consent. The result would be ludicrous.

*Maddox*, 69 Md. App. at 301, 517 A.2d at 372. It would be equally, if not more, ludicrous to conclude that the purpose of the Wiretap Act extended to protect a party who records their own conversation without the consent of the other party, and then seeks to block its admission due to the intentional failure to obtain the other person's consent. Agnew cannot be an aggrieved person by virtue of his own act of interception. Agnew did not merely permit a third party to record the conversation, as in *Maddox*, but intercepted it himself, deliberately violating the Wiretap Act. Because Agnew knowingly and intentionally recorded himself and another person on his phone, he should not be able to claim sanctuary as an "aggrieved person" under the Wiretap Act.

The Wiretap Act protects oral communications, including "any conversation or words spoken to or by any person in a *private* conversation." Cts. & Jud. Proc. § 10-401(13)(i) (emphasis added). We have consistently interpreted the word "private" to be

12

consistent with Fourth Amendment jurisprudence, encompassing conversations in which the participants have a "reasonable expectation of privacy." *Fearnow v. Chesapeake & Potomac Tel. Co. of Md.*, 342 Md. 363, 376, 676 A.2d 65, 71 (1996). In determining whether a recorded conversation was "private" under the Wiretap Act, "we apply the two-pronged inquiry applicable to search and seizure cases set forth in *Katz v. United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 516 (1967) (Harlan, J. concurring)." *Malpas v. State*, 116 Md. App. 69, 84, 695 A.2d 588, 595 (1997).[5]

Unlike the plaintiffs in *Katz* and *Benford*, Agnew did not have a reasonable expectation of privacy in his conversation with the unidentified person. Agnew clearly intended for the communication to be intercepted because he was the one who made the surreptitious recording. *Cf. Benford*, 554 F. Supp at 154. Agnew's expectation of privacy is more akin to the level of privacy one would have if they engaged in a loud, public conversation that could be overheard rather than that of a person who reasonably believed their private conversation was not being recorded. *See Katz*, 389 U.S. at 361, 88 S. Ct. at 516 (Harlan, J. concurring) ("[C]onversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable.") (citing *Hester v. United States*, 265 U.S. 57, 44 S. Ct. 445 (1924)). Agnew lacks a reasonable expectation of privacy in the audio-recorded conversation and is

---

[5] "[T]here is a twofold requirement, first that a person has exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz*, 389 U.S. at 361, 88 S. Ct. at 516 (Harlan, J. concurring).

therefore not entitled to the protections afforded by § 10-402(a) of the Maryland Wiretap Act.

## CONCLUSION

We conclude that the trial court did not err in admitting the audio-recorded conversation over the objection of Agnew.  Agnew cannot use the Maryland Wiretap Act to prevent admission of a recording that he made merely because the unidentified person did not consent to its interception.  In sum, we determine that the intended purpose of the Maryland Wiretap Act was not to protect a party who records a conversation without the consent of the other parties, and then provide the opportunity of that party to block its admission.  As such, where a party to a communication consents to or participates in the interception of that communication, § 10-402(a) of the Maryland Wiretap Act does not render the intercepted communication inadmissible against the consenting party.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

14