*Aaron Harrison-Solomon v. State of Maryland*
No. 40, September Term, 2014


CRIMINAL LAW – NOT CRIMINALLY RESPONSIBLE – CONDITIONAL RELEASE FROM INPATIENT TREATMENT – CONTINUATION OF CONDITIONS – DUE PROCESS – Court of Appeals held that a trial court retained jurisdiction to extend the duration of an order of conditional release, pursuant to Maryland Code (2001, 2008 Repl. Vol.), Criminal Procedure Art., § 3-122, after the term of a previous order of conditional release expired, where the application for the extension was filed before the expiration occurred. There is no indication that the General Assembly intended, under such circumstances, to limit the jurisdiction of courts over persons previously found guilty, but not criminally responsible, for crimes. A court must rule, however, on the State's timely filed request within a reasonable time, as required by the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights. In the present case, the court ruled timely on the application to extend the patient's conditional release.

Circuit Court for Prince George's County
Case No. CT980287X & CT011671X
Argued: 9 January 2015

IN THE COURT OF APPEALS OF
MARYLAND

No. 40

September Term, 2014

---

AARON HARRISON-SOLOMON

v.

STATE OF MARYLAND

---

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
McDonald,
Rodowsky, Lawrence F. (Retired,
        Specially Assigned),
Cathell, Dale R. (Retired,
        Specially Assigned),

JJ.

---

Opinion by Harrell, J.

---

Filed: March 30, 2015

Having been found not criminally responsible for certain crimes, Aaron Harrison-Solomon ("Petitioner") seeks review of the denial by the Circuit Court for Prince George's County of his motion to alter or amend its order extending the conditions of his release from inpatient commitment for psychiatric care. The Court of Special Appeals affirmed. We granted Harrison-Solomon's petition for a writ of certiorari to consider his single question:

> Where Petitioner was committed to the Department of Health & Mental Hygiene pursuant to a finding that he was not criminally responsible, was subsequently conditionally released, and did not violate any of the conditions of his release, did the circuit court have jurisdiction, after the expiration of the order of conditional release (OCR), to grant a motion to "extend" the OCR filed five days prior to its expiration?

For reasons we shall explain, we affirm the judgment of the Court of Special Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On 15 June 1999, Harrison-Solomon pleaded guilty in the Circuit Court for Prince George's County to two counts of second degree assault. The Court found him not criminally responsible, pursuant to Maryland Code (1982, 1996 Repl. Vol.), Health General Article, § 12-108, and committed him to the Department of Health and Mental Hygiene (the "Department" or the "State") for inpatient treatment.[1]

---

[1] Maryland Code (1982, 1996 Repl. Vol.), Health General Article § 12-108 ("HG") was repealed and replaced by 2001 Maryland Laws Ch. 10 (S.B. 1) as part of a recodification initiative. No substantive changes were made. The statute is codified currently as Maryland Code (2001, 2008 Repl. Vol.), Criminal Procedure Art., § 3-109 ("CP"). The statute provides: "A defendant is not criminally responsible for criminal conduct if, at the

(Continued…)

Harrison-Solomon was released conditionally by the Circuit Court's order of 23 March 2000. The Order of Conditional Release required, among other things, that Harrison-Solomon: (1) reside with his mother; (2) receive and follow the treatment advice of a specified psychiatrist; (3) attend a semester of high school and thereafter remain involved with meaningful daytime activities approved by his therapist; (4) refrain from using illegal drugs or alcohol and submit to urine testing; and (5) notify and receive approval of his therapist before taking certain actions, such as changing his place of residence, employment, or marital status. The duration, on its face, of this Order of Conditional Release was three years.

On 21 December 2001, Harrison-Solomon was indicted for attempted murder, robbery with a deadly weapon, and use of a handgun in commission of a felony or of a crime of violence. As a result, the Circuit Court rescinded the 2000 Order of Conditional Release and recommitted Harrison-Solomon to impatient treatment. A jury found him guilty on 12 December 2002, but again not criminally responsible, of robbery and use of a handgun in commission of a felony or of a crime of violence.

Upon the recommendation of an Administrative Law Judge (ALJ) of the Maryland Office of Administrative Hearings, the Circuit Court again released conditionally

---

(…continued)
time of that conduct, the defendant, because of a mental disorder or mental retardation, lacks substantial capacity to: (1) appreciate the criminality of that conduct; or (2) conform that conduct to the requirements of law." CP § 3-109(a).

Harrison-Solomon on 3 July 2006.[2] The facial duration of this order was through 3 July 2011. Among the changes in conditions from those in the 2000 Order of Conditional Release were requirements that Harrison-Solomon participate in a residential program and that he may visit his parents only if authorized by those treating his mental illness. When Harrison-Solomon's family became no longer able to support financially execution of some of the terms of his conditional release, the Circuit Court excused those requirements, such as electronic monitoring and some portions of the outpatient care regimen.

In November of 2009, the State petitioned the Circuit Court to revoke Harrison-Solomon's conditional release. According to the State, he violated the terms of the 2006 Order of Conditional Release by not following the directions of his housing provider, missing a medication injection, and visiting his mother without receiving the proper prior approval. Harrison-Solomon was re-committed to impatient medical treatment on 17 November 2009.

An ALJ found, on 13 May 2010, that, although Harrison-Solomon violated the 2006 Conditional Release Order, he would not be a danger to himself or others if released subject to conditions substantially similar to those in the 2006 order. Therefore, the ALJ recommended that he be released conditionally for the remaining duration of the 2006

---

[2] Harrison-Solomon had sought previously from the Circuit Court conditional release on 4 February 2003 and 4 February 2005, but both petitions were denied.

Order. On June 15, the Circuit Court released Harrison-Solomon in accordance with the ALJ's recommendations.

On 28 June 2011, five days before Harrison-Solomon's conditional release was to expire, according to the extant Order, the Department filed with the Circuit Court an Application for Extension of Conditional Release seeking to extend the terms of the Order for an additional four years, pursuant to Maryland Code (2001, 2008 Repl. Vol.), Criminal Procedure Art., § 3-122 ("CP"). Supporting the requested extension was an attached evaluation from a physician. Although the evaluation noted Harrison-Solomon's perfect attendance at treatment sessions, compliance with his medication regime to that time, and "pleasant" demeanor, it stated also that he "announced his intention to abandon psychiatric treatment so that his mind can be free to think." The evaluation continued that Harrison-Solomon "ha[d] not developed any insight into [the] role of medication [in] maintaining psychiatric stability." A copy of the Application was mailed to Harrison-Solomon's attorney on 23 June 2011. On 31 August 2011, approximately two months after the facial last day of the Order of Conditional Release (3 July 2011), the Circuit Court granted, without a hearing (none was requested by either party), the Department's Application, extending the conditions of release for an additional four years. Harrison-Solomon did not file an opposition to the Application.

Harrison-Solomon, through counsel, filed on 13 September 2011 a Motion to Alter or Amend under Maryland Rule 2-534. He asserted that the Circuit Court's jurisdiction over him ended on 3 July 2011, at the expiration of the 2006 Order of Conditional Release, and therefore the order entered on August 31 extending his conditional release

4

was invalid. The Department answered that it filed the Application for Extension of Conditional Release before the 2006 Order expired, so the Court retained jurisdiction to rule on the Application.

After holding a hearing on November 10, the Circuit Court held that CP § 3-122[3] did not impose upon the court a mandatory or fixed deadline by which it had to decide a

---

[3] CP § 3-122 provides:

> (a) *In general.* — (1) An application to the court for a change in conditional release of a committed person may be made by:
>> (i) the Health Department or the State's Attorney at any time; or
>> (ii) the committed person not earlier than 6 months after the court ordered the conditional release, unless the court for good cause permits an earlier application.
> (2) The applicant for a change in conditional release shall notify the court and other parties, in writing, of the application and the reasons for the requested change.
> (b) *Burden of proof.* — The burden of proof of any issue raised by the application for change in conditional release rests with the applicant.
> (c) *Court action.* — After the court considers the application for change in conditional release and the evidence, in accordance with § 3-114 of this title, the court shall:
>> (1) change the conditions;
>> (2) impose appropriate additional conditions;
>> (3) revoke the conditional release;
>> (4) continue the present conditions of release; or
>> (5) extend the conditional release by an additional term of 5 years.
> (d) *Reapplication.* — (1) Not earlier than 1 year after the court action on the application for change filed by the committed person, and not more than once a year thereafter, a committed person may reapply for a change in conditional release.

(Continued…)

timely-filed application to extend a conditional release. Rather, the court retained jurisdiction in Harrison-Solomon's case. The fact that the court did not rule on the Application until after the end date of the facial duration of the 2006 Order of Conditional Release was "of no consequence." The court denied Harrison-Solomon's Motion to Alter or Amend.[4]

Harrison-Solomon appealed to the Court of Special Appeals the Circuit Court's denial of his Motion to Alter or Amend. According to him, by granting the Department's Application, the Circuit Court did not "extend" the duration of the Order of Conditional Release as contemplated by CP § 3-122, but rather "revived" the conditional release after it had expired. This was not authorized by the statute, as Petitioner's argument continued, and was beyond the court's jurisdiction. The State retorted that CP § 3-122 did not impose any deadlines by which the Department was required to file an application to extend an order of conditional release or by which the Court was required to rule on such an application.

---

(…continued)

> (2) Notwithstanding the time restrictions in paragraph (1) of this subsection, a committed person may apply for a change in conditional release at any time if the application is accompanied by an affidavit of a physician or licensed psychologist that states an improvement in the mental condition of the committed person.

[4] There is no evidence that the Circuit Court displayed any lack of diligence in deciding the Application.

The Court of Special Appeals reviewed the denial of Harrison-Solomon's Motion to Alter or Amend for abuse of discretion, noting "'that trial judges do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature.'" *Harrison-Solomon v. State*, 216 Md. App. 138, 146, 85 A.3d 310, 316 (2014) (quoting *Wilson–X v. Dep't of Human Res.*, 403 Md. 667, 675, 944 A.2d 509 (2008)). After considering the legislative intent of CP § 3-122 and particularly a decision of the Illinois intermediate appellate court in a similar case, the intermediate appellate court panel held that a circuit court retains jurisdiction over such a case "as long as an application for a change in conditional release is filed before the expiration of the conditional release term . . . even if the order is issued after the [Order of Conditional Release] otherwise would have expired."

Harrison-Solomon sought a writ of certiorari from this Court. We granted his petition. *Harrison-Solomon v. State*, 438 Md. 739, 93 A.3d 288 (2014).[5]

## II. ANALYSIS

The interpretation of a statute is a question of law, which we consider *de novo*. *Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 181, 909 A.2d 694, 699 (2006). Denial of a revisory motion under Md. Rule 2-534 is reviewed for abuse of discretion. *Miller v. Mathias*, 428 Md. 419, 438, 52 A.3d 53, 64 (2012) (citing

---

[5] The Maryland Disability Law Center, On Our Own of Maryland, Mental Health Association of Maryland, and The Public Justice Center joined to submit a brief as *amici curiae* in support of Harrison-Solomon's interpretation of CP § 3-122.

*RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 673, 994 A.2d 430, 451 (2010)).

*A. Intent of the Legislature*

When interpreting statutes, we seek to ascertain and implement the will of the Legislature. *Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580, 103 A.3d 658, 663 (2014); *Johnson v. Mayor & City Council of Baltimore City*, 387 Md. 1, 11, 874 A.2d 439, 445 (2005); *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002). Our first step toward that goal is to examine the text. "If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction." *Lockshin v. Semsker*, 412 Md. 257, 275, 987 A.2d 18, 28-29 (2010).[6] If ambiguities are found, other indicia of legislative intent are consulted, including the relevant statute's legislative history, the context of the statute within the

---

[6] In certain of our cases, we stated that an investigation of the apparent purpose of the statute should accompany the textual analysis, even if the language is unambiguous. *See Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 581, 103 A.3d 658, 663 (2014); *Lockshin v. Semsker*, 412 Md. 257, 275–76, 987 A.2d 18, 28–29 (2010); *Drew v. First Guar. Mortgage Corp.*, 379 Md. 318, 327, 842 A.2d 1, 6 (2003). In other cases, we stated that our analysis ends if we find the language unambiguous. *Haile v. State*, 431 Md. 448, 467, 66 A.3d 600, 611 (2013); *Stoddard v. State*, 395 Md. 653, 662, 911 A.2d 1245, 1250 (2006). Keeping in mind the ultimate end of divining the will of the Legislature, however, it is clear that looking to other evidence of legislative intent is appropriate, even if merely to ratify that our conclusion of the unambiguous meaning of the statute is correct. *Bd. of Educ. of Baltimore Cnty. v. Zimmer-Rubert*, 409 Md. 200, 214, 973 A.2d 233, 241 (2009) ("we may resort to legislative history to ensure that our plain language interpretation is correct").

broader legislative scheme, and the relative rationality of competing constructions. *Witte*, 369 Md. at 525-26, 801 A.2d at 165.

1. Text of CP § 3-122

The text of CP § 3-122 supports the conclusion that the Circuit Court retained jurisdiction to decide the Department's application to continue the conditions of Harrison-Solomon's release.[7] CP § 3-122 provides (and provided at all times during Harrison-Solomon's latest conditional release):

> (a) *In general.* — (1) An application to the court for a change in conditional release of a committed person may be made by:
>> (i) the Health Department or the State's Attorney at any time; or
>> (ii) the committed person not earlier than 6 months after the court ordered the conditional release, unless the court for good cause permits an earlier application.
>
> (2) The applicant for a change in conditional release shall notify the court and other parties, in writing, of the application and the reasons for the requested change.

---

[7] As the State signals, even if CP § 3-122 could be read to impose a deadline upon the Circuit Court to act on the Application to extend the Order of Conditional Release before it expires, the Court would not lack necessarily jurisdiction to rule on the timely-filed Application. Statutory deadlines may be either mandatory or directory. *Woodfield v. W. River Improvement Ass'n, Inc.*, 395 Md. 377, 388, 910 A.2d 452, 459 (2006). When a deadline is directory, non-compliance may result in "no penalty at all." *Id.* (quoting *Tucker v. State*, 89 Md. App. 295, 297–98, 598 A.2d 479, 481 (1991)). Further, we have been reluctant to find a loss of jurisdiction for a court's failure to meet even a mandatory deadline, if such a consequence is not required by the statute. *See Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 467, 597 A.2d 939, 945 (1991); *In re Keith W.*, 310 Md. 99, 103-04, 527 A.2d 35, 37 (1987); *State v. One 1980 Harley Davidson Motorcycle VIN No. 9G3593950*, 303 Md. 154, 160, 492 A.2d 896, 899 (1985) ("the State should not suffer ordinarily the sanction of dismissal because of an error on the part of the [courts]").

(b) *Burden of proof.* — The burden of proof of any issue raised by the application for change in conditional release rests with the applicant.

(c) *Court action.* — After the court considers the application for change in conditional release and the evidence, in accordance with § 3-114[8] of this title, the court shall:

    (1) change the conditions;

    (2) impose appropriate additional conditions;

    (3) revoke the conditional release;

    (4) continue the present conditions of release; or

    (5) extend the conditional release by an additional term of 5 years.

(d) *Reapplication.* — (1) Not earlier than 1 year after the court action on the application for change filed by the committed person, and not more than once a year thereafter, a committed person may reapply for a change in conditional release.

    (2) Notwithstanding the time restrictions in paragraph (1) of this subsection, a committed person may apply for a change in conditional release at any time if the application is accompanied by an affidavit of a physician or licensed psychologist that states an improvement in the mental condition of the committed person.

Whether CP § 3-122 authorizes the extension of the conditions of a release after the expiration of the immediately previous order depends on the legislative intent underlying the choice to use in the statute the terms—"any time" in (a)(1)(i), "shall" in (c), and "extend" in (c)(5).

Harrison-Solomon, pondering the use of "extend" in CP § 3-122(c)(5), argues that its plain meaning is that the General Assembly intended for extensions of a patient's

---

[8] CP § 3-114(b) allows "for discharge from commitment only if that person would not be a danger, as a result of a mental disorder or mental retardation, to self or to the person or property of others if discharged." CP § 3-114(c) allows for conditional release if the patient would not be dangerous because of conditions imposed by the court.

conditional release to be valid only if the current conditional release order was in effect at the time the extension is granted. According to him, the conditions may not be "extended" where, as here, the order of conditional release expired before the Circuit Court acted.[9] Indeed, "extend" has been defined as "to continue; to prolong." *Webster's New Universal Unabridged* 645 (1983).[10] For something to be continuous, a stop-and-start scenario would be inconsistent.

It is not uncommon, however, for courts to extend or prolong a deadline or time period retrospectively (often referred to still by reference to the Latin phrase "*nunc pro tunc*"—"then as now"). Opportunities for retrospective extensions are recognized in Maryland and Federal courts. *See* Md. Rule 1-204(a) (allowing courts to extend a deadline before its expiration and, if the failure to act to seek timely an extension was the result of excusable neglect, after its expiration); *Dep't of Pub. Safety & Corr. Servs. v. Neal*, 160 Md. App. 496, 509, 864 A.2d 287, 294 (2004) ("Rule 7-204 expressly grants

---

[9] The nature of this dispute does not require us to determine the vitality of the conditions placed previously on Harrison-Solomon's release between the expiration of the 2006 Order of Conditional Release on 3 July 2011 and its extension on 31 August 2011. It is not alleged that any conditions were violated during that period.

[10] It is the sounder practice, when looking to the meaning of words used in a statute, for a court to "resort to a dictionary, legal or otherwise, [which] should logically include consultation of those editions (in addition to current editions) of dictionaries that were extant at the time of the pertinent legislative enactments." *Harvey v. Marshall*, 389 Md. 243, 260 n.11, 884 A.2d 1171, 1181 n.11 (2005). The language of CP § 3-122 had its genesis in 1984, s*ee* 1984 Maryland Laws Ch. 501 (S.B. 645). Other dictionaries did not include the "to continue" definition of "extend," *see* Webster's Ninth New Collegiate Dictionary 439 (1989); *Extend,* https://www.google.com/?gws_rd=ssl#q=extend. Other alternative definitions attributed to "extend" in *Webster's New Universal Unabridged* did not contain any sense of continuance.

11

the court discretion to extend the time for filing a response to the petition; and the language of Rule 7-204 does not preclude the court from exercising that discretion to extend the filing deadline retroactively, after it has passed"); *Birt v. Surface Transp. Bd.*, 90 F.3d 580, 589 (D.C. Cir. 1996) (holding that the Interstate Commerce Commission had authority to extend retrospectively a Certificate of Interim Trail Use eight days after the Certificate had expired); *In re Minh Vu Hoang*, 484 B.R. 87 (D. Md. 2012) (retrospectively granting a motion for extension of time to file motions). These circumstances do not support Harrison-Solomon's interpretation of "extend" in CP § 3-122(c)(5), even if the dictionary definition tends to support his reading and might suggest ambiguity.

The other key statutory terms tend to support the State's reading. Criminal Procedure § 3-122(a)(1)(i) states that "[a]n application to the court for a change in conditional release of a committed person may be made by the Health Department or the State's Attorney at *any time* . . . ." *Id.* (emphasis added). Further, CP § 3-122(c) states that "[a]fter the court considers the application for change in conditional release and the evidence, in accordance with § 3-114 of this title, the court *shall*" either change the set of conditions, revoke the release, continue the present conditions, or extend the conditional release. *Id.* (emphasis added).

The term "any time" is not ambiguous. We have considered frequently the meaning of "shall" as used in statutes. "As this Court and the intermediate appellate court have reiterated on numerous occasions, the word 'shall' indicates the intent that a provision is mandatory." *Perez v. State*, 420 Md. 57, 63, 21 A.3d 1048, 1052 (2011)

12

(citing *State v. Green*, 367 Md. 61, 82, 785 A.2d 1275, 1287 (2001)). Combining the terms, it appears that the Legislature intended here that the State or the Department may propose a change in the conditional release whenever it feels justified to do so (as long as it files the request during the "life" of an extant order), and the court is required to rule on the application (as long as it does so within a reasonable time, as we shall discuss *infra* Part II.B). The statute provides no specific time parameters for filing the application or ruling by the court. Because a court is required to take one of the specified actions once the application has been filed, it retains jurisdiction to rule on the request. We conclude that the text of the statute, as a whole, tends to support the State's position that the Circuit Court retained jurisdiction to rule on the Department's application after the facial expiration date of the 2006 Order of Conditional Release.

Although the Court of Special Appeals found that the plain meaning of the text was unambiguous, the reading offered by Harrison-Solomon is not entirely irreconcilable with the text. Thus, it does not follow necessarily that the meaning of CP § 3-122 is unambiguous. As noted, the text of the statute allows on its face for an application to change the conditions to be filed at *any time*. No time limits are set specifically for the filing of the application by the State or Department or the ruling by the court. The intermediate appellate court noted, however, that "[i]n a situation where an application is not filed within the term of conditional release, however, once the [Order of Conditional Release] expires, the court no longer would have jurisdiction to extend it." *Harrison-Solomon*, 216 Md. App. at 151 n.10, 85 A.3d at 319 n.10. Thus, an aroma of ambiguity

13

lingers in the air.[11] Against that whiff of ambiguity, we shall look, in an abundance of caution, to other signposts to discern the direction of legislative intent.[12]

## 2. CP § 3-122 Viewed in the Context of the Relevant Title of the Maryland Code

Other provisions of Title 3 of the Criminal Procedure Article point in the direction of the interpretation of the text of CP § 3-122 urged by the Department. The General Assembly demonstrated elsewhere in Title 3 that it understood how to impose unambiguously temporal deadlines for various actions in other contexts. *See, e.g.*, CP § 3-115(a) ("Within 50 days after commitment to the Health Department under § 3-112 of this title, a hearing officer of the Health Department shall hold a hearing . . . ."); CP § 3-115(c) ("[A]t least 7 days before the release hearing is scheduled, the Health Department shall complete an examination and evaluation of the committed person."); CP § 3-116(a)

---

[11] The State argues that the expiration of an order of conditional release (presumably without an application to extend filed before expiration) results only in termination of the conditions, but does not discharge the patient from the jurisdiction of the court under the statute. Title 3 of the Criminal Procedure Article contains no provision for releasing a patient without conditions (as distinct from discharging the patient). Discharge is governed, however, by CP § 3-114, which requires that the committed person prove that he or she would not be a danger if discharged. Because a person who is released conditionally has not demonstrated that he or she would not be a danger if discharged, it is conceivable, as the State argues, that the expiration of the conditions of release is not equivalent to a full and unqualified discharge.

We need not to decide in the present case whether persons released conditionally need to seek discharge to end the jurisdiction of the court to place conditions on them. Neither of the parties briefed nor argued significantly this point.

[12] The Court of Special Appeals considered also the purpose of the statute, its legislative history, policy considerations, and the interpretation of analogous statutes by the appellate courts of other states, finding ratification for its plain meaning reading of the text of CP § 3-122. *Harrison-Solomon v. State*, 216 Md. App. 138, 148 n.8, 151-54, 85 A.3d 310, 317 n.8, 319-320 (2014).

14

("Within 10 days after the hearing ends, the Office shall prepare a report of recommendations to the court . . . ."); CP § 3-116(d) (" The committed person, the State's Attorney, or the Health Department may file exceptions to the report of the Office within 10 days after receiving the report."); CP § 3-117 ("Within 30 days after the court receives the report of recommendations from the office: (1) the court on its own initiative may hold a hearing; or (2) if timely exceptions are filed, or if the court requires more information, the court shall hold a hearing . . . ."); CP § 3-118 ("Within 15 days after a judicial hearing ends or is waived, the court shall determine whether the evidence indicates that the committed person proved by a preponderance of the evidence eligibility for release, with our without conditions . . . and enter an appropriate order . . . ."); CP § 3-121(i) ("After the court considers the report of the Office, the evidence, and any exceptions filed, within 10 days after the court receives the report, the court shall" revoke, modify, continue, or extend the conditional release.).

When CP § 3-122 is considered against the clear deadlines in other provisions of Title 3 of the Criminal Procedure Article, whether directory or mandatory, it seems obvious that the Legislature did not intend to impose a strict or finite deadline (jurisdiction stripping or otherwise) on courts deciding timely-filed applications to extend the conditions of a patient's conditional release. There is no obvious reason why the Legislature, if it intended to limit the jurisdiction of courts, would do so by forced inference (from a dictionary definition of "extend" as used in CP § 3-122, as argued by

15

Petitioner), instead of using unambiguous language as it used elsewhere in the same title.[13] The context of CP § 3-122 within Title 3 of the Criminal Procedure Article suggests that the Legislature did not intend to strip the courts of jurisdiction to consider and act upon a timely filed application to extend a patient's conditional release after the expiration of the previous conditional release order, although we shall interject a judicial gloss to be discussed *infra* Part II.B.

### 3. Legislative History

The legislative history of CP § 3-122 points in a similar direction. The genesis of the current scheme of commitment and conditional release of defendants in criminal cases who are found not criminally responsible was the "Task Force to Review the Defense of Insanity" created by Governor Harry Hughes in 1982. *See Anderson v. Dep't of Health & Mental Hyg.*, 310 Md. 217, 220, 528 A.2d 904, 906 (1987).[14] As a result of the report of the Task Force, Senate Bill 645 of 1984 was enacted by the General Assembly, altering significantly Maryland's insanity defense in criminal cases. *See id.*; 1984 Maryland Laws Ch. 501.

The Task Force was created and submitted its recommendations in the wake of the verdict that John Hinckley was not guilty, by reason of insanity, of any crimes for his

---

[13] The explicit deadlines of Title 3 had their genesis in the same legislative bill as CP § 3-122. *See* 1984 Maryland Laws Ch. 501 (S.B. 645).

[14] Title 12 of the Health-General Article of the Maryland Code primarily contained the regulatory scheme later re-codified as Title 3 of the Criminal Procedure Article. 2001 Maryland Laws Ch. 10 (S.B. 1). CP § 3-122 was previously HG § 12-121.

attempted assassination of President Ronald Reagan. Governor's Task Force to Review the Defense of Insanity, *Report to the Governor* at 3 (1984) (hereinafter Report of Governor's Task Force). Ultimately, the Task Force found that, although the insanity defense was an appropriate and integral part of Maryland's criminal justice system, problems existed with the commitment and release of insane defendants. *Id.* at 8-9. According to the Task Force, it had become increasingly difficult to commit involuntarily individuals, even where treatment was in their best interest and would prevent future dangerous behavior. *Id.* at 9. The Task Force found also that many chronically mentally ill people found guilty of misdemeanors had become "'street people' in numbers that represent[ed] a real contemporary problem." *Id.* These concerns motivated a legislative response.

Prior to Senate Bill 645, a plea of insanity and the introduction of *prima facie* evidence of insanity by a defendant necessitated that the State, in order to obtain a conviction, prove, beyond a reasonable doubt, that the defendant was sane when he or she committed the crime. *Anderson*, 310 Md. at 220, 528 A.2d at 906. If the State failed to prove the defendant's sanity, the statute in existence before 1984 required the trial court to commit immediately the defendant for evaluation. *Anderson*, 310 Md. at 221, 528 A.2d at 906. To continue commitment beyond the evaluation phase, the State was required to prove, by clear and convincing evidence, that the defendant met the requirements for indefinite civil commitment. *Id.*

Meanwhile, a committed defendant could travel any of several avenues to secure release from commitment. He or she could pursue a direct judicial release proceeding

17

provided for in the relevant statute, at which he or she had the burden of proving, by preponderance of evidence, fitness for release. *Id.* A habeas corpus petition provided also for judicial scrutiny of the confinement. *Id.* Finally, the defendant could seek an administrative release hearing at which the State had to prove, by clear and convincing evidence, that continued confinement was appropriate. *Id.*

Senate Bill 645 reconfigured the allocation of the burdens of proof and made continued confinement and supervision of defendants found previously not criminally responsible somewhat easier to achieve by the State. During a criminal trial, the burden was shifted to the defendant to prove by a preponderance of the evidence that he or she was not criminally responsible. *Id.* The initial commitment examination and hearing were discarded and, in their place, the defendant became automatically committed indefinitely. *Id.* Finally, the defendant, rather than the State, was charged with demonstrating eligibility for discharge, conditional release, or the necessity of changes in the conditions of release. *Id.* An aim of Senate Bill 645 was to make more difficult raising successfully an insanity defense and easier for the State to maintain restrictions on those found not criminally responsible.

The tenth "major" recommendation of the Governor's Task Force concerned exclusively the status of conditional release. Report of Governor's Task Force at 31. The Task Force recommended that the General Assembly enact legislation to "[p]rovide more efficient procedures for revocation of conditional release and permit the court to extend a conditional release for an additional term of 5 years." *Id.* The Task Force proposed language similar to the current CP § 3-122 for changes resulting from a violation of the

18

conditional release and for applications to change conditional release in the absence of a violation. 1984 Maryland Laws Ch. 501 (HG §§ 12-120 and 12-121).[15] When the change of conditional release was the result of a violation of the existing conditions of release, however, the Task Force recommended that the court, "within 10 days after the court receives the report [from a hearing officer from the Department], the court shall" make its

---

[15] The language proposed for HG §12-220 for modifying conditional release where a violation of the conditions of release existed stated in pertinent part:

> After the court considers the hearing officer's report, the evidence, and any exceptions filed, within 10 days after the court receives the report, the court shall:
> (1) revoke the conditional release and order the committed individual to return to the facility designated by the department;
> (2) modify the conditional release as required by the evidence;
> (3) continue the present conditions of release; or
> (4) extend the conditional release by an additional term of 5 years.

1984 Maryland Laws Ch. 501. The language proposed for HG §12-221 for modifying conditional release in the absence of a violation of the conditions of release stated in pertinent part:

> After the court considers the application for change in conditional release and the evidence, in accordance with §12-113 of this title, the court shall:
> (1) change the conditions;
> (2) impose appropriate additional conditions;
> (3) revoke the conditional release;
> (4) continue the present conditions of release;
> (5) extend the conditional release by an additional term of 5 years.

*Id.* The terms of §12-221 are identical to those now codified in CP § 3-122.

ruling. Report of Governor's Task Force at 31. No such requirement was thought necessary for applications to change or extend conditional release in the absence of a violation.

The General Assembly accepted the Task Force's recommendations and did not include in the final version of Senate Bill 645 a deadline for changes in conditional release when there was no violation of the pre-existing conditions of release. 1984 Maryland Laws Ch. 501. The provisions for modifying a patient's conditional release in either instance appeared sequentially in the final Bill, so the Legislature would have been aware of the option of imposing a deadline. *See id.*

The comments of the Task Force (which were included by the Legislature in the Session Laws of the Bill) demonstrate also that our interpretation of "shall" in this statute was intended. About the section of Senate Bill 645 that would be codified as HG § 12-121 (and eventually re-codified as CP § 3-122), the Session Laws reported favorably the Task Force's comment that "[i]n subsection (c) of this section, the phrase 'court shall' is substituted for 'court may' to clarify that the court is required to take one of the 5 specified actions if an application is appropriately made."

The Task Force and the Legislature were guided by a desire to strengthen protection of the public from the inappropriate release and discharge of defendants in criminal cases who are found not criminally responsible.[16] The Legislature made it more

---

[16] The Committee Report prepared on Senate Bill 645 for the Senate Judicial Proceedings Committee stated that "[t]he purpose of the bill is to implement the

(Continued…)

difficult for defendants to avoid punishment by claiming mental non-culpability and increased the State's ability to confine not criminally responsible defendants and require conditions for their release. There is no evidence that the Legislature intended to limit the jurisdiction of courts deciding an application for an extension of conditional release. On the contrary, the Legislature chose to refrain from imposing a finite deadline.

### 4. Policy Considerations

When "confronted with ambiguity regarding legislative intent, it is our duty to announce a rule that we are convinced is best supported by sound jurisprudential policy germane to the pursuit of legislative intent." *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 493, 914 A.2d 735, 749 (2007). In rare instances, considering the practical consequences of competing interpretations may outweigh other principles of statutory construction. *Id.*

As Harrison-Solomon and the *amici curiae* point out, a Court reinstating conditions after a long period of time, during which they may have been unenforced or unenforceable, could raise some fairness and due process concerns. *See infra* Part II.B. In many situations the conditions of release, although deemed necessary by the court and authorized by the General Assembly, limit severely the patient's autonomy. For example,

---

(…continued)
recommendations of the Task Force in an effort to streamline and strengthen, where necessary, the procedures for the defense of not criminally 'responsible' in Maryland." Department of Legislative Reference, *Committee Report*, Senate Judicial Proceedings Committee at 3.

Harrison-Solomon was required by the 2006 Order of Conditional Release, among other things, to live in an outpatient facility, comply with all treatment and medication ordered by his doctors, and receive permission before visiting his parents. He was required even to consult with his therapists, and presumably comply with their decisions, if he sought to marry or to father children. It would be jarring understandably for someone who had been living without these conditions for a lengthy period of time, while awaiting a court's decision whether to reinstate them, to have them re-imposed.[17] Indeed, it is possible that some of the conditions ordered previously, such as participation in a specific outpatient or residential program, may become unavailable during the interlude if the patient became unenrolled, thereby perhaps defaulting to institutional confinement for inpatient treatment.

The State contends that these concerns may be addressed through means other than limiting the jurisdiction of courts. A patient awaiting a court's ruling could seek a writ of mandamus or seek proactively a discharge or termination of the conditions. If the circumstances of a delay and reinstatement were to amount arguably to a viable claim of a violation of the patient's right to due process, he or she would be able to challenge the

---

[17] We presume, for the purpose of this analysis (without deciding), that a timely-filed application for extending an order of conditional release would not continue automatically the conditions during the period between facial expiration of the extant order and when the court ruled on the application. The present case does not require us to confront this question, and we decline to consider it in dicta. If such a circumstance in a future case were to come properly before us, other policy and due process concerns might arise.

order on those grounds, without the need to impose a uniform and time-definite jurisdictional limit.

Although patients would have some avenues of recourse, the State's open-ended interpretation of CP § 3-122 might impose an additional burden and uncertainty on some. People suffering from a mental disorder, even if they were not a danger to themselves or others, might be less able than an unimpaired person to mount a legal challenge. Harrison-Solomon and the *amici curiae* highlight negative effects on patients released conditionally if the State's major premise is adopted without limitation.

That notwithstanding, the State presents persuasive considerations as well in support of its reading of CP § 3-122. For a court to order the extension of a patient's conditional release, the State or the Department must demonstrate, by a preponderance of the evidence, that the conditions of release are appropriate or the patient must fail to establish that he or she would not be a danger if discharged or released without conditions. *See* CP § 3-122(b); CP §3-114.[18, 19] For the application to be granted, the

---

[18] CP § 3-122(b) provides that "[t]he burden of proof of any issue raised by the application for change in conditional release rests with the applicant." Yet CP § 3-122(c) indicates that the Court must make the determination of whether to change the conditions, impose additional conditions, revoke the conditional release, continue the present conditions, or extend the conditional release, in accordance with CP § 3-114. In turn, CP § 3-114(d) states that a committed person has the burden to establish that he or she either be discharged or released conditionally.

[19] Title 3 of the Criminal Procedure Article contains no provision for releasing a patient without conditions (as distinct from discharging the patient). This may be arguably possible, however, if the court retains jurisdiction until a patient obtains discharge under CP § 3-114. If such were the case, at the expiration of the order of conditional release the

(Continued…)

23

court would have to find that it was more likely than not that the patient was a danger to himself, herself or others.[20] If a court would have ruled otherwise to extend the order of conditional release (but for having lost jurisdiction), the public safety would be jeopardized and the patient would be released from the therapeutic environment required for his or her possible recovery and protection.

The State's concerns are mitigated by Maryland's civil commitment regime. If a patient only avoided being a danger to himself/herself or the public while following the conditions of release, failing to follow them could be grounds for commitment. Even though the State would have to prove dangerousness by clear and convincing evidence, rather than demonstrate that it was merely more likely so than not, *Addington v. Texas*, 441 U.S. 418, 432, 99 S. Ct. 1804, 1812 (1979) (holding that civil commitment required clear and convincing proof), indisputably dangerous patients would not be released without conditions, according to Harrison-Solomon's interpretation. It is clear from the legislative history of Senate Bill 645 of 1984, however, that the Legislature wanted to

(…continued)
patient would be free from conditions, but not discharged, as the State argued in the alternative at oral argument as a sort of fall-back position. *But see infra* note 24.

[20] Although multiple reasonable interpretations of the intersection of CP § 3-122 and CP § 3-114 are possible, the relevant standard requires proof by a preponderance of evidence. Whichever party bears the initial burden, the court determines whether it is more likely than not that the patient would be a danger if released with conditions or without conditions, as the case may be. *See Coleman v. Anne Arundel Cnty. Police Dep't*, 369 Md. 108, 125, 797 A.2d 770, 781 (2002). The court is making the same finding of dangerousness if, for example, the State failed to show by a preponderance of the evidence that a patient would be a danger without conditions as it would be if the patient failed to show that he or she would not be a danger to be released without conditions.

remove from the State the burden of proving by clear and convincing evidence the need for continued supervision of defendants found not criminally responsible.

We have long held that we "cannot disregard the mandate of the Legislature and insert an exception, where none has been made by the Legislature, for the sake of relieving against hardship or injustice[,]" except in extreme circumstances.[21] *Schmeizl v. Schmeizl*, 186 Md. 371, 375, 46 A.2d 619, 621 (1946); *c.f. State v. Fleming*, 173 Md. 192, 196, 195 A. 392, 393 (1937); *Alexander v. Worthington*, 5 Md. 471, 485 (1854). The policy concerns raised by Harrison-Solomon and the *amici curiae* do not tip ultimately the scale in his favor, so as to overcome the evidence of the Legislature's intent for courts to retain jurisdiction to rule on timely-filed applications to extend an order of conditional release.

### 5. Decisions by Courts of Other Jurisdictions

---

[21] The United States Supreme Court summarized the standard thusly, analogizing the interpretation of a contract to that of a constitution:

> But if, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application.

*Sturges v. Crowninshield*, 17 U.S. 122, 202-03 (1819). Although we express the principle differently, we agree with the relative rarity of adopting a construction contrary to the apparent intent of the Legislature.

The appellate courts of other states have held that their trial courts retain jurisdiction to extend conditional release or inpatient confinement for patients found not criminally responsible (or the respective jurisdiction's equivalent) after the term of their conditional release or inpatient confinement has expired, provided the application was filed before the expiration.

In *People v. Maglio*, 923 N.E.2d 866 (Ill. App. Ct. 2010), the Illinois intermediate appellate court considered a case on all fours with the question presented here. Maglio was found not guilty, following a bench trial, of two counts of first degree murder by reason of insanity and was eventually released conditionally for a period of five years.[22] *Id.* at 328. Two weeks before his conditional release expired, Illinois filed a petition to extend conditions for an additional period of five years and requested an evidentiary hearing. *Id.* The matter came before the court after expiration of the facial duration of the immediate prior order. The trial court denied the State's petition and subsequent requests for reconsideration, stating that it lacked jurisdiction over the patient after the expiration

---

[22] Finding a defendant not criminally responsible under Maryland Law is not an acquittal, but rather operates as a release from punishment. *Treece v. State,* 313 Md. 665, 676, 547 A.2d 1054, 1059 (1988). For purposes of commitment for mental disorder and subsequent conditional release, however, acquitting a defendant by reason of insanity under the law of Illinois is the functional equivalent of finding a defendant guilty, but not criminally responsible, under Maryland's scheme. Like states that acquit defendants for mental disorders negating criminal responsibility, commitment is not deemed ordinarily a punishment in Maryland.

of the term of conditional release. *Id.* The Illinois appellate court reversed the trial court and remanded the case for further consideration.[23] *Id.*

The reasoning in *Maglio* is similar to the State's argument and the reasoning of the Maryland Court of Special Appeals in the present case. According to the Illinois appellate court:

---

[23] The relevant Illinois statute and CP § 3-122 are analogous. 730 Ill. Comp. Stat. Ann. 5/5-2-4 provided:

> 'Conditional Release' means: the release from either the custody of the Department of Human Services or the custody of the Court of a person who has been found not guilty by reason of insanity under such conditions as the Court may impose which reasonably assure the defendant's satisfactory progress in treatment or habilitation and the safety of the defendant and others.
> * * *
> Such conditional release shall be for a period of five years. However, the defendant, the person or facility rendering the treatment, therapy, program or outpatient care, the Department, or the State's Attorney may petition the Court for an extension of the conditional release period for an additional 5 years. Upon receipt of such a petition, the Court shall hold a hearing consistent with the provisions of paragraph (a), this paragraph (a–1), and paragraph (f) of this Section, shall determine whether the defendant should continue to be subject to the terms of conditional release, and shall enter an order either extending the defendant's period of conditional release for an additional 5–year period or discharging the defendant. Additional 5–year periods of conditional release may be ordered following a hearing as provided in this Section.

*Maglio*, 923 N.E.2d at 869.

> [T]he trial court could retain jurisdiction over defendant until the State's petition and supplemental motion were adjudicated. Pursuant to section 5–2–4(a–1)(D), after a petition for an extension is filed, the court "shall" hold a hearing regarding defendant's mental health. Here, the trial court was required to hold an evidentiary hearing regarding defendant's mental health, which it did not do. It appears from the record the trial court was mistaken that first, the State's petition had to allege a basis for extending defendant's conditional release, and second, that the court lost jurisdiction over defendant after his term of conditional release expired even though the State's petition and supplemental motion had been filed prior to the term expiring.

*Id.* at 331-31. As in the Maryland statute, the use of "shall" in the Illinois statute indicates the legislature's intent to grant continuing jurisdiction until the trial court rules on the motion. CP § 3-122 contains additional language allowing the State or Department to apply for an extension at "any time," a strong indication that Maryland courts retain jurisdiction to rule on applications after the expiration of the order of conditional release.

The Illinois court noted also another Illinois intermediate appellate court decision of potentially collateral consequence to the present case. In *People v. Marshall*, 652 N.E.2d 1294 (1995), the term of conditional release for a patient found not guilty by reason of insanity expired without action by the State. *Id.* at 1296. Later, a report recommending an extension of the conditions of release was sent to the court, but the State and the patient agreed (initially) that the trial court did not retain jurisdiction to extend the conditional release. *Id.* The State requested ultimately that the hearing be placed back on the docket, however, arguing that the court retained jurisdiction. *Id.* The trial court held that it retained jurisdiction to extend the patient's conditional release and committed the patient, who was no longer taking medication, to inpatient treatment. *Id.* at

28

1297. The intermediate appellate court reversed, reasoning that the specified term of the order of conditional release provided for discharge at the termination date, absent a motion filed by Illinois before the termination date.[24] *See id.* at 1299-1300.

A New York court, in *Matter of Ramon M.*, 294 A.D.2d 59 (N.Y. App. Div. 2002), held that an order of conditional release could be extended even if it expired before the State filed a motion to extend. The case involved appeals from two patients found not responsible for crimes by reason of mental disease. *Id.* at 60-61. The relevant New York authorities requested an extension for each patient's conditional release after their respective conditional release orders had expired. *Id.* at 61-62. The trial court denied both applications for extensions, holding in one case that extensions "'must be made within the time period in which such order remains in effect, and not after it has expired[,]'" and in the other simply that the State's application was untimely for missing the deadline in the other. *Id.* The Commissioner of the New York State Office of Mental Health appealed both cases. *Id.*

The New York intermediate appellate court reversed the trial court and remanded the cases for further consideration. *Id.* at 68. Central to the appellate court's reasoning was that the New York legislature "did not include any language limiting the ability of a

---

[24] The Court of Special Appeals approved seemingly of this in dicta. *See Harrison-Solomon*, 216 Md. App. at 151 n. 10, 85 A.3d at 319 n. 10 ("In a situation where an application is not filed within the term of conditional release, however, once the OCR expires, the court no longer would have jurisdiction to extend it."). We neither approve nor disapprove that view. As we discuss *infra* Part II.B, however, the application must be determined within a reasonable time so that due process is not violated.

court to extend an order of conditions after expiration." Noting the absence of clear legislative intent to limit the court's jurisdiction, the appellate court held that the purpose of the statute, to protect the public, required that the trial court retain jurisdiction to consider and act on the application.[25] *See id.* at 62, 65.

In *State v. Roland*, 973 S.W.2d 665 (Tex. 1998) (per curiam), the Supreme Court of Texas dealt with an analogous situation to the case at hand. Roland was found not guilty by reason of insanity of attempted murder and committed to inpatient treatment for one year beginning on 16 June 1994. *Id.* at 666. His commitment was extended on 13 June 1995 for an additional year. *Id.* On 31 July 1996, forty-seven days after the previous order expired on its face, the trial court extended the commitment for a second time. *Id.* The intermediate appellate court held that the trial court's failure to hold the hearing before the commitment order expired compelled Roland's release. *Id.* The Supreme Court of Texas reversed. *Id.*

---

[25] The patients in *Matter of Ramon M.*, 294 A.D.2d 59 (N.Y. App. Div. 2002), did not argue that it was a violation of due process for the court to act on an application to extend an order of conditional release that was filed after the expiration of the previous order. They did challenge, however, the constitutionality of the statute on the grounds that, under the interpretation adopted by the court, orders of conditional release could potentially be interminable. *Id.* at 65. According the New York intermediate appellate court, the availability to seek a writ of mandamus or of habeas corpus was sufficient to overcome the patients' constitutional challenge. *Id.*

Texas's statutory regime, at the time of *Roland*, provided two options at the expiration of a commitment.[26] *Id.* The trial court either could discharge the patient or hold a hearing to determine if commitment should be continued, modified, or terminated. *Id.* If the trial court chose to hold a hearing, "it must be held 'prior to the expiration of the commitment order.'" *Id.* (quoting Tex. Crim. Proc. Code art. 46.03, § 4(d)(5)). The Texas Supreme Court noted, however, that the statute did not specify any consequence for a court's failure to act timely.[27] Ultimately, the Texas Supreme Court held that although the deadline was framed in mandatory language, failing to hold a timely hearing did not strip the court of jurisdiction. *Id.* at 667.

As noted previously in this opinion, CP § 3-122 does not impose a finite deadline by which a circuit court must act on a timely-filed application for extension. *Roland* is informative because, even in a jurisdiction with a clear, mandatory deadline, a trial court's delay in deciding a motion to extend mandatory treatment until some presumably reasonable time after the expiration of the previous treatment term did not strip the court

---

[26] In 2005, the Texas legislature overhauled its insanity defense and related commitment statutory regime. *See* 2005 Tex. Sess. Law Serv. Ch. 831 (S.B. 837). Tex. Crim. Proc. Code Ann. art. 46C.261 governs currently the extension of inpatient or outpatient treatment for defendants found not guilty by reason of insanity.

[27] The current Texas statute also contains similar language stating that "[t]he court shall act on the request for renewal before the order expires," but still does not indicate that the court will lose jurisdiction absent timely action. *See* Tex. Crim. Proc. Code Ann. art. 46C.261.

of jurisdiction.[28] Harrison-Solomon has not identified for us (nor have we found) any jurisdiction in which a court becomes unable to extend commitment to inpatient treatment or conditional release because the court did not rule on a timely-filed motion to extend the mandatory treatment before the previous order mandating treatment expired.

## 6. Analogy to Probation

Harrison-Solomon analogizes conditional release from inpatient mental health treatment to probation in a criminal case context, arguing that we should treat the end date of conditional release the same as the end date of a probation order for purposes of determining ongoing court supervision. Presumably, as the argument goes, the Legislature would not intend similar situations to have different outcomes. Although conditional release and probation are similar superficially, Petitioner's attempt at constructing this analogy crumbles because of the disparate foundational purposes of probation and conditional release.

Petitioner relies on *Carter v. State*, 193 Md. App. 193, 996 A.2d 948 (2010), as his main support for this argument. Carter was granted probation before judgment in connection with a charge of second degree assault. *Carter*, 193 Md. App. at 197, 996 A.2d at 950. As a condition of probation, Carter was required to pay restitution to the

---

[28] In California, the deadlines imposed on the treatment personnel and prosecuting attorney seeking to extend commitment or outpatient treatment are directory merely, but the courts retain jurisdiction to rule on a motion to extend conditional release after the date passes for termination of compulsory treatment. *See People v. Lara*, 226 P.3d 322, 327 (Cal. 2010) (upholding a trial court's ruling for an extension of a patient's commitment that was made seven months after the commitment was scheduled to terminate).

victim spread over his two year period of probation. *Carter*, 193 Md. App. at 197-98, 996 A.2d at 951. Although Carter paid the restitution as ordered, the trial court (nearly a month after his probation expired) extended his probation, subject to additional restitution for the victim's ongoing therapy expenses. *Carter*, 193 Md. App. at 202, 996 A.2d at 953. Carter appealed. *Carter*, 193 Md. App. at 203, 996 A.2d at 953.

The Court of Special Appeals vacated the order of the trial court. *Carter*, 193 Md. App. at 214, 996 A.2d at 960. According to our appellate brethren, "in the absence of a probation violation, a court does not have jurisdiction to extend the term of probation after the original term of probation has expired." *Id.* The panel reasoned that the extension of probation was an illegal sentence that was not authorized by the relevant probation statute. *Id.* From this, Harrison-Solomon synthesizes an equivalent rule for orders of conditional release: in the absence of a violation of the conditions of release, a court does not have continuing jurisdiction to extend the term of the conditions after the facial term of conditional release expires. The attempted syllogism fails to recognize the essential differences between probation and conditional release of those found not criminally responsible.[29]

---

[29] Even disregarding the fundamental differences between probation and conditional release from inpatient treatment of those found not criminally responsible, there is no reason the General Assembly could not treat them differently for less obvious reasons. For example, different treatment of similar schemes could be the result of changing legislative or societal attitudes or a response to specific stimuli from governmental agencies, special interest groups, or the public-at-large. The Legislature could treat schemes differently also for no discernable reason at all. The judicial preference for consistency will not supplant usually the Legislature's will.

Probation is a punishment. *See Donaldson v. State*, 305 Md. 522, 530, 505 A.2d 527, 532 (1986). Although we have called probation "a matter of grace" and effectively clemency, *Scott v. State*, 238 Md. 265, 275, 208 A.2d 575, 580 (1965), its fundamental nature is different from the treatment of people found not criminally responsible.

Commitment of those found not criminally responsible and the restrictions of conditional release are not designed to punish, but rather to protect the public from the patient and the patient from himself or herself. If the patient is unlikely to represent a risk to others or himself/herself, CP § 3-114 mandates that the patient be discharged if a court renders affirmatively such a holding. Although the State supervision could be indefinite potentially, it could also be relatively brief. Unlike someone subject to probation, there is no longer a determined time for which the patient will be subject to judicial oversight, absent an outright discharge.

### B. Due Process

Whatever the intention of the Legislature with regard to CP § 3-122, it must comply with the Due Process Clause of the Fourteenth Amendment and its counterpart provision in Maryland, Article 24 of the Maryland Declaration of Rights.[30] Under what the United States Supreme Court termed "the canon of constitutional avoidance," we will

---

[30] The Fourteenth Amendment states, in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." Article 24 of the Maryland Declaration of Rights provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

construe a statute to avoid conflict with the Constitution whenever it is reasonably possible to do so, even to the extent of applying a judicial gloss to interpretation that skirts a constitutional confrontation. *Koshko v. Haining*, 398 Md. 404, 425-26, 921 A.2d 171, 183 (2007) (citing *In re James D.*, 295 Md. 314, 327, 455 A.2d 966, 972 (1983)). We do not presume that the Legislature intended to enact unconstitutional legislation and, if it did so intend, we would limit a statute to only those situations in which it would pass constitutional muster. *See Burruss v. Bd. of Cnty. Commissioners of Frederick Cnty.*, 427 Md. 231, 263-64, 46 A.3d 1182, 1201 (2012) (citing *Koshko*, 398 Md. at 426, 921 A.2d at 184) (stating that a challenge to the facial validity of a statute must establish that there is no set of circumstances under which the act would be constitutional).

All Maryland "proceedings are to be tested by fundamental fairness—the touchstone of due process." *State v. Bryan*, 284 Md. 152, 159 n.6, 395 A.2d 475, 479 n.6 (1978) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S.Ct. 1756 (1973)). Similarly, the State has generally an obligation to apply for extensions in a reasonably diligent and prompt manner. *See State v. Berry*, 287 Md. 491, 499, 413 A.2d 557, 562 (1980) (stating that probation revocation proceedings must be brought within reasonable time to satisfy due process).[31] Therefore, a circuit court must rule on a timely-filed application within a reasonable time.

---

[31] Although revocation of probation proceedings are not illustrative here of the intent of the Legislature because of the different purposes of conditional release and probation, due process considerations are analogous to both.

The State filed its application while Petitioner was subject clearly to the 2006 Order of Conditional Release and the jurisdiction of the Circuit Court. Harrison-Solomon, through counsel, was aware of the pending application. The Circuit Court ruled on the application sixty-four days after the State filed its application, after making attempts to reach the parties and expedite its ruling. There is no indication in the record that either the State, the Department, or the Circuit Court failed to act with diligence or delayed the process to a point amounting to undue prejudice to or denying Harrison-Solomon due process.[32] Hence, the trial court acted within a reasonable time.

### III. CONCLUSION

We hold that the Circuit Court retained jurisdiction for a reasonable time to decide the timely-filed application to extend the 2006 Order of Conditional Release, pursuant to CP § 3-122. All roads seeking interpretation of the statute lead to the conclusion that the General Assembly did not intend to place a finite deadline by which courts must rule on timely-filed applications to extend conditional release pursuant to CP § 3-122. Further, a decision on a timely-filed extension request rendered after the expiration of an order of conditional release does not *ipso facto* violate due process, when decided within a reasonable time and where no undue prejudice is shown to have been worked on the patient during the time it took to decide the application. In the instant case, there is no indication of undue prejudice or that the Circuit Court delayed for an unreasonable time

---

[32] The trial judge attempted to contact the parties in order to expedite his ruling on the Application, but he was unable to reach the parties' attorneys and decide the matter before taking a scheduled absence from his chambers.

36

before ruling on the State's application for an extension on Harrison-Solomon's conditional release. Therefore, we affirm the judgment of the Court Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**