*J.A.B. v. J.E.D.B.,* Case No. 519, September Term 2020. Opinion filed on April 27, 2021, by Berger, J.

<u>CHILD CUSTODY – GROUNDS AND FACTORS IN GENERAL – FACTORS RELATING TO PARTIES SEEKING CUSTODY – ABUSE OF PERSON OTHER THAN CHILD – COMMISSION OF CRIME – WELFARE AND BEST INTERESTS OF CHILD</u>

Where a trial court expressly finds that Mother was subjected to abuse by Father, the court is required to consider Md. Code Ann., § 9-101.1 of the Family Law Article in its custody determination. The trial court must make arrangements to best protect both the child and the victim of the abuse. Merely including an additional, mandatory consideration in its analysis does not equate to prioritization of that consideration by the trial court. The trial court did not err by considering the safety of Mother in its custody determination pursuant to Family Law § 9-101.1.

<u>CHILD CUSTODY – GROUNDS AND FACTORS IN GENERAL – FACTORS RELATING TO CHILD – WELFARE AND BEST INTERESTS OF CHILD</u>

Where a trial court analyzes and explains its analysis of the factors relating to the best interests of the minor children, we will not disturb those findings unless they were clearly erroneous or a clear showing of an abuse of discretion. The trial court considered all factors relevant to the best interests of the minor children and determined that this case was not appropriate for joint legal custody due to the history of violence between the parties and their inability to communicate. Further, the trial court considered the history of the parties and the protection of the victim of abuse, Mother, and determined Mother having primary physical custody with Father having unsupervised visitation was in the best interest of the minor children. There was no showing of clearly erroneous findings of fact or any evidence of a clear abuse of discretion by the trial court.

<u>EVIDENCE – ADMISSIBILITY – IN GENERAL – WITNESSES – PROCEEDINGS – CREDIBILITY AND IMPEACHMENT – MANNER OF TESTIFYING</u>

To allow a participant to testify via remote electronic participation without consent of the parties, the participant must be essential to the proceeding, not able to appear in person due to a significant hardship, and her testimony must not substantially prejudice any party or adversely affect the proceeding. Here, a neighbor who possibly heard evidence of abuse from Mother through a shared wall of the home was not essential to the proceeding. Further, due to the nature of the neighbor's proffered testimony, the credibility and demeanor of the participant would be critical, and the trial court could not evaluate credibility via the telephone. Finally, Mother's ability to cross-examine the participant would be limited if required to do so by telephone. The trial court did not abuse its discretion in refusing to allow the neighbor to testify via telephone.

Circuit Court for Harford County
Case No. 12-C-17-001373

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 519

September Term, 2020

_____

J.A.B.

v.

J.E.D.B.

_____

Berger,
Leahy,
Eyler, James R.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Berger, J.

_____

Filed: April 27, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case involves a custody dispute originating in the Circuit Court for Harford County. J.A.B. ("Father") filed a complaint for limited divorce against J.E.D.B. ("Mother") on June 2, 2017.[1] Father subsequently filed a complaint for absolute divorce on January 4, 2019. The circuit court, after an eight-day trial, awarded sole legal custody and primary physical custody to Mother.[2] The court further ordered Father to have visitation with the minor children every other weekend and once or twice during the week depending on whether school is in session. The court issued its Memorandum Opinion and final custody order on May 14, 2020. Father noted a timely appeal.

Father presents three questions for our review,[3] which we have reordered and rephrased as follows:

---

[1] We shall refer to the parties by their initials in order to protect their and their children's privacy.

[2] "Physical custody . . . means the right and obligation to provide a home for the child and to make the day-to-day decisions required during the time the child is actually with the parent having such custody." *Taylor v. Taylor*, 306 Md. 290, 296 (1986). "Legal custody carries with it the right and obligation to make long range decisions involving education, religious training, discipline, medical care, and other matters of major significance concerning the child's life and welfare." *Id.*

[3] Father's original questions presented are as follows:

> I.   Did the Trial Court commit legal error by prioritizing the protection of the Appellee over the best interests of the Minor Children in its evaluation pursuant to § 9-101 *et. seq.* of the Family Law Article?

> II.  Did the Trial Court commit reversible error and an abuse of discretion in refusing to allow the telephonic testimony of a non-party witness during Appellant's rebuttal case?

I.  Whether the trial court erred, as a matter of law, by prioritizing the protection of Mother from Father pursuant to Md. Code Ann., § 9-101.1 of the Family Article over the best interests of the parties' minor children.

II.  Whether the trial court abused its discretion in its analysis of the best interests of the minor children and ultimately limiting Father's time with the minor children.

III.  Whether the trial court abused its discretion in refusing to allow a non-party witness to testify telephonically.

For the reasons explained herein, we shall affirm.

## FACTS AND PROCEEDINGS

Mother and Father married on July 4, 2009 in Baltimore County, Maryland. The parties lived together as husband and wife following the marriage. Throughout the marriage, there were periods of time in which the parties were separated and lived apart. The parties had two children as a result of their marriage: A. and W., who were ages 7 and 5 respectively, at the time of the trial.[4] Throughout the marriage, both parties were abusive to each other. Father verbally, physically, and sexually abused Mother several times, some of which occurred in the view of the minor children. Mother reacted to Father's abuse in different ways, both physically and verbally. On different occasions, Father encouraged

_____

III.  Did the Trial Court abuse its discretion in its analysis of what is in the best interests of the Minor Children by restricting the Appellant's time with the Minor Children?

[4] We shall refer to the children by only their first initial to protect their privacy.

2

A. to strike or hit Mother and W. There was no evidence presented that either party ever physically abused the minor children. In April of 2017, the parties and the minor children moved in with Mother's parents during a period of construction on their family home. One evening during their stay, the parties became angry while they were putting the children to bed. Mother's father, Mr. D., approached the parties and asked Father to be quiet. At that point, Father engaged in an angry tirade against Mr. D. while Father was holding W. Mr. D. and his wife both testified that Father assaulted Mr. D. during the rant. It was this incident which resulted in the filings of petitions for protective orders against Father.

On June 2, 2017, Father filed a complaint for limited divorce in the Circuit Court for Harford County. At the time of the filing, four petitions for protective orders were pending before the trial court. One petition was filed against Mother by Father. Further, three petitions were filed against Father by Mother and both of her parents, stemming from the incident in April of 2017. The trial court held a hearing on June 12, 2017 in which the parties agreed to the terms of a Consent Order relating to the care and custody of the minor children. Notably, the Order drafted on June 12, 2017 was never signed by either party due to a dispute between the parties' counsel as to the contents of the Order. The trial court held two hearings regarding Father's visitation with the minor children, first on July 27, 2017 and then again on August 1, 2017. An Order was issued on August 1, 2017 that dictated Father's supervised access to the minor children.

On July 7, 2017, Mother filed an answer to Father's complaint for limited divorce and a counterclaim for limited divorce. Father requested joint physical and legal custody of the minor children while Mother requested sole physical and legal custody. On

3

August 30, 2017, the trial court referred the parties for a psychological evaluation with Dr. Syretta James ("Dr. James"). At the time, a no-contact order between the parties was in effect. Therefore, the evaluation was conducted jointly, but took place in the courthouse using a jury deliberation room. Dr. James filed her completed psychological evaluations with the trial court on October 31, 2017. Dr. James found that Father was the aggressor in the parties' relationship and that any abusive behavior by Mother was reactive to Father's violence and coercive control over her. Further, Dr. James noted one specific incident during a family interview when Father tried to influence and change A.'s responses to questions centering around the abuse within the family.

Later, the parties agreed to the appointment of a Best Interest Attorney on behalf of the minor children. Further, the parties agreed to obtain a Parenting Assessment and an Intimate Partner Violence Assessment. The trial court ordered that Dr. James would perform both Assessments. The trial court issued an Order mandating both Assessments on December 4, 2017. After a request for an extension, Dr. James filed the Assessments with the court on April 9, 2018. While the case was pending, Father enrolled in, and completed, an Abuser Intervention Program based on a recommendation from Dr. James. Additionally, Father attended individual therapy with Dr. Carlene Gibson ("Dr. Gibson").

On August 9, 2018, the parties filed a joint request for postponement due to Father's retention of new counsel, the complex nature of the litigation, and a lack of exchange of discovery materials. The trial court granted the request on August 14, 2018. On August 28, 2018, the parties appeared before the court for a pretrial conference. Both parties proffered their respective positions on the issue of Father's access with the minor children until the

4

trial could be held. At that time, the trial court permitted Father to have supervised visitation with the minor children every other weekend and twice during the week.

On December 3, 2018, the parties entered into a Consent Order outlining the scheduling of depositions of various witnesses presented by both parties. On December 31, 2018, Mother and both of her parents were deposed. Father filed a supplemental complaint for absolute divorce on January 4, 2019. Subsequently, Father filed an amended complaint for absolute divorce. On March 20, 2019, Father filed a motion for postponement due to the hospitalization of his counsel. Father's motion was granted the same day.

Trial began on September 17, 2019. The trial was originally scheduled for four days, to conclude on September 20, 2019. The parties, however, required an additional four days. The parties appeared before the trial court on December 18 and 19, 2019, and again on February 19 and 20, 2020. The trial was held solely on custody related issues because Father had filed for bankruptcy.[5] At the proceedings on February 19, 2020, Father indicated his intent to call two rebuttal witnesses, one being the parties' former neighbor, N.S.. Father requested for the trial court to allow N.S. to testify telephonically regarding Father's contention that Mother was the abuser in the family dynamic. The trial court denied Father's motion.

---

[5] The trial court stayed any proceedings related to non-custodial issues until Father's bankruptcy case resolved. At this time, the stay has been lifted as Father's bankruptcy case has concluded.

The trial court issued its Memorandum Opinion on May 14, 2020. The trial judge expressly found that Father was abusive to Mother throughout the course of their marriage. Further, the trial court awarded Mother sole legal custody and primary physical custody of the minor children. The Memorandum Opinion outlined specific and limited access between the Father and the minor children. The trial court lifted the supervision requirement for Father's visits with the minor children. Father filed a motion to revise the judgment on June 15, 2020. On the same day, Mother filed a motion for clarification of the Memorandum Opinion. On June 30, 2020, the trial court denied Father's motion. The same day, the trial court granted Mother's motion and clarified the parties' access schedule related to the Mother's Day holiday. Father timely appealed to this Court on July 24, 2020.[6]

---

[6] Generally, a notice of appeal must be filed within thirty days after the entry of judgment from which the appeal is taken. Md. Rule 8-202(a). Nevertheless, "[i]n a civil action, when a timely motion is filed pursuant to Rule 2-532, 2-533, or 2-534, the notice of appeal shall be filed within 30 days after entry" of a withdrawal of the motion or an order denying or disposing of the motion. Md. Rule 8-202(c). Maryland Rule 8-202(c) "also extends the time period for noting an appeal to this court when a party files a revisory motion under Rule 2-535 within 10 days after entry of judgment." *Estate of Vess*, 234 Md. App. 173, 194 (2017). Critically,

> [i]f a party files a post-trial revisory motion more than 10 days after judgment and if, in ruling on the motion, the court does revise its earlier ruling in some respect, the revised ruling becomes the final judgment. Thus, parties gain a renewed right to appeal if they appeal within 30 days after the docketing of the revised judgment.

Judge Kevin F. Arthur, *Finality of Judgments and Other Appellate Trigger Issues* § 19 (The Maryland State Bar Association ed., 3d ed. 2018) (citing *Gluckstern v. Sutton*, 319 Md. 634, 651 (1990)).

# DISCUSSION

## Standard of Review

We review child custody determinations utilizing three interrelated standards of review. *In re Yve S.*, 373 Md. 551, 586 (2003). The Court of Appeals described the three interrelated standards as follows:

> [W]e point out three distinct aspects of review in child custody disputes. When the appellate court scrutinizes factual findings, the clearly erroneous standard of [Rule 8-131(c)] applies. [Second,] if it appears that the [court] erred as to matters of law, further proceedings in the trial court will ordinarily be required unless the error is determined to be harmless. Finally, when the appellate court views the ultimate conclusion of the [court] founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the [court's] decision should be disturbed only if there has been a clear abuse of discretion.

*Id.* (internal citations omitted). In our review, we give due regard to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* at 584. We recognize that

> it is within the sound discretion of the [trial court] to award custody according to the exigencies of each case, and . . . a reviewing court may interfere with such a determination only on a clear showing of abuse of that discretion. Such broad discretion is vested in the [trial court] because only [the trial judge] sees the witnesses and the parties, hears the testimony, and has the opportunity to speak with the child; he is in far better position than is an appellate court, which has only a cold

---

Here, both Mother and Father's motions to revise the trial court's opinion were filed more than ten days, but less than thirty days, after the entry of the opinion. Accordingly, the filing of the motions alone did not extend the time for filing a notice of appeal. Critically, however, the trial court granted Mother's motion on June 30, 2020 and revised the earlier judgment "in some respect." *Id.* This action by the trial court extended the time for filing of a notice of appeal to thirty days after the entry of this Order. Father filed his notice of appeal on July 24, 2020. Therefore, his appeal was timely filed.

7

record before it, to weigh the evidence and determine what disposition will best promote the welfare of the minor.

*Id.* at 585–86.

When a custody decision involves the interpretation of a statute, we "must determine whether the trial court's conclusions are legally correct, and, if not, whether the error was harmless." *Gizzo v. Gerstman*, 245 Md. App. 168, 191–92 (2020) (citing *Burak v. Burak*, 455 Md. 564, 616–17 (2017)). The trial court is vested with a broad authority in determining the admissibility of evidence. *See* Md. Rule 5-104(a). This includes the authority to decide whether to admit certain testimony, and by what methodology. *Bey v. State*, 140 Md. App. 607, 623 (2001). We will only disturb a decision made within the discretion of the trial court "where it is apparent that some serious error or abuse of discretion or autocratic action has occurred." *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312–13 (1997) (internal citation omitted).

We will not make our own determination as to a child's best interest. *See Gordon v. Gordon*, 174 Md. App. 583, 637–38 (2007). Rather, "the trial court's decision governs, unless the factual findings made by the [trial] court are clearly erroneous or there is a clear showing of an abuse of discretion." *Id.* Generally, "[a] trial court's findings are not clearly erroneous if there is competent or material evidence in the record to support the court's conclusion." *Azizova v. Suleymanov*, 243 Md. App. 340, 372 (2019) (internal citation omitted).

**I.** **The trial court properly considered Md. Code Ann., § 9-101.1 of the Family Law Article as an additional consideration related to its custody determination in conjunction with all other factors and did not improperly prioritize any factor over another.**

First, we turn to Father's contention that the trial court improperly prioritized the protection of Mother in its custody determination. Section 9-101.1 of the Family Article of the Maryland Code provides:

> (b) In a custody or visitation proceeding, the court shall consider, when deciding custody or visitation issues, evidence of abuse by a party against:
>
> > (1) the other parent of the party's child;
> >
> > (2) the party's spouse; or
> >
> > (3) any child residing within the party's household, including a child other than the child who is the subject of the custody or visitation proceeding.
>
> * * *
>
> (c) If the court finds that a party has committed abuse against the other parent of the party's child, the party's spouse, or any child residing within the party's household, the court shall make arrangements for custody or visitation that best protect:
>
> > (1) the child who is the subject of the proceeding; and
> >
> > (2) the victim of the abuse.

Md. Code (1991, 2019 Repl. Vol.), § 9-101.1 of the Family Law Article. This provision contains the word "shall," which means that compliance is mandatory. *See 75-80 Props., LLC v. Rale, Inc.*, 470 Md. 598, 631–32 (2020) (citing *Harrison-Solomon v. State*, 442 Md. 254, 269 (2015)); *see also* Md. Rule 1-201(a). Therefore, the trial court was required by law to consider the abuse of a party against the other parent of the party's child as an

9

additional consideration in its custody determination and "make arrangements to best protect the child and the victim of the abuse." *Gizzo*, *supra*, 245 Md. App. at 197; *see also* Family Law § 9-101.1(c). Father's contention relating to the trial court's prioritization of the provision in Family Law § 9-101(c) over other custody determination factors is an issue of first impression before this Court.[7]

The legislative history of Family Law § 9-101.1

> indicates recognition by the Legislature of a deep concern over the effect on a child of being in the maelstrom of *any* domestic violence within the home, including the abuse of adults and other children, whether or not those victims are related to the child whose custody or visitation is at issue.

*In re Adoption No. 12612*, 353 Md. 209, 236–37 (1999) (emphasis in original). When enacting this statute, the legislature considered "the adverse effects on children from abusive households generally." *Id.* at 237. These effects include the psychological harm from witnessing violent behavior and the increased likelihood "that violence directed against others, including adults in the home, will eventually be directed against [the children] as well." *Id.* "Abuse," as used in the statute, includes "assault in any degree." Md. Code (2001, 2019 Repl. Vol., 2020 Suppl.), § 4-501(b)(1)(iii) of the Family Law Article.

---

[7] This Court recently issued an opinion in a case concerning the application of Family Law § 9-101.1. *See Gizzo*, *supra*, 245 Md. App. 168. Critically, in *Gizzo*, the issue before us was whether a trial court is required to specifically reference and acknowledge Family Law § 9-101.1 in its opinion to meet the requirement provided in the statute. *See id.* at 196–98. We held that specific reference to the statute was not necessary so long as it was obvious in the trial court's opinion that the requisite factors were considered. *Id.* at 198–99.

10

The Court of Appeals and this Court have identified several factors for a trial court to consider when making a custody determination as to a minor child. *Taylor*, *supra*, 306 Md. 290; *Montgomery Cnty. Dep't of Social Servs. v. Sanders*, 38 Md. App. 406 (1978). Critically, the Court noted in *Taylor* that the factors described in these cases were not an exhaustive list and made it permissible for a court to consider "other factors" when making a custody determination. *Taylor*, *supra*, 306 Md. at 311. Indeed, "a trial court should carefully set out the facts and conclusions that support the solution it ultimately reaches." *Santo v. Santo*, 448 Md. 620, 630 (2016).

Here, the trial court received evidence that Father was abusive to Mother throughout the marriage. Further, the trial court found Mother's testimony to be "extremely credible" and Father's testimony "not credible." "'Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder.'" *State v. Smith*, 374 Md. 527, 533–34 (2003) (quoting *State v. Stanley*, 351 Md. 733, 750 (1998)). The trial court noted in its Memorandum Opinion that Mother was subjected to abuse such as sexual assault, physical strikes, bites, and verbal rants. Once the trial court made a finding that Mother, as the parent of the parties' minor children, was subjected to abuse, the trial court was obligated to consider Family Law § 9-101.1 in its custody determination due to the mandatory nature of the provision. *See* Family Law § 9-101.1(c); Md. Rule 1-201(a).

In its Memorandum Opinion, the trial court analyzed and explained in detail its findings regarding each of the required factors addressed in *Sanders* and *Taylor*. The trial court indicated that while many of the factors did not weigh in favor of either party, five of the factors weighed in favor of Mother. The trial court indicated that both parents love

11

their children and have good relationships with them. Critically, the trial court found that Father repeatedly attempted to "portray [Mother] as being mentally unstable" and refused to truly accept responsibility for his role as the aggressor in the relationship. The court further noted the importance of the violent incident between Father and Mr. D. that occurred in full view of W. The trial court also expressed concern over the repeated encouragement from Father to A. to strike and physically assault her younger brother and Mother.

The very last consideration recognized by the trial court concerned the effect of Family Law § 9-101.1 on its custody determination. Indeed, the court indicated its discussions of spousal abuse and expressly found that Father had committed abuse against Mother. By making this determination, the trial court considered the protection of both the minor children and the victim of the abuse, Mother. *See* Family Law § 9-101.1(c). While noting that Father had taken steps to address the intimate partner violence that occurred in the marriage, the trial court determined that there had been no evidence presented of continued abuse since the parties' separation. The court further noted that the parties' inability to communicate effectively was a direct result of the violence suffered by Mother at the hands of Father. Therefore, in order to protect both the minor children and Mother, the court did not find it appropriate for joint legal custody in this case. This decision, the court noted, would protect Mother from any further abuse or coercive control by Father. Nevertheless, the trial court required that Mother notify and advise Father of all events concerning the children.

Regarding physical custody, the trial court awarded primary physical custody to Mother, with Father having unsupervised visitation every other weekend and once or twice a week, depending on whether school was in session. Critically, the trial court ordered that the exchanges occur at a police precinct or any other public location agreed upon by the parties.[8] In its opinion, the trial court determined that Mother needed to have frequent contact with the children to alleviate any concern regarding their time with Father, due to his history of violence.

In our view, the trial court did not improperly prioritize any one factor, including the abuse of a party or child as addressed in Family Law § 9-101.1(c). The trial court considered and analyzed each factor identified in both *Sanders* and *Taylor*, providing an in-depth analysis of every factor. At the conclusion of its analysis, the trial court addressed Family Law § 9-101.1 and its implications. The trial court was required to utilize the additional consideration of abuse in making a decision regarding custody and visitation which best protects the children and the victim of abuse, Mother. In awarding sole legal

---

[8] Father contends that changing the access and visitation schedule would reduce the interactions between the parties, further protecting the interests of the abused party, Mother, as outlined in Family Law § 9-101.1(c). We do not find this argument persuasive. Any exchange of the minor children was ordered to occur at a police precinct or another public location. At oral argument, Father argued that an exchange in a "vacant parking lot" would not be safe for Mother in accordance with Family Law § 9-101.1(c). We reject this characterization by Father. In our view, a parking lot of a police station is safe due to the presence of law enforcement personnel invariably nearby. There is no indication that the court was interested in protecting Mother from this type of situation. Rather, the trial court was primarily concerned with protecting Mother from any private interactions and added stress of worrying about her children while they were with Father for uninterrupted, extended periods of time. Therefore, changing Father's access to 50/50 custody between the two parents would not result in any additional protections for Mother.

13

custody to Mother, the trial court considered the protection of Mother from further control by Father. The trial court also considered the past violent behavior of Father and his continued inability to accept responsibility.

Further, in awarding primary physical custody to Mother, the trial court considered the protection of the minor children due to the "strong likelihood" that the violence could turn on them in the future. *See In re Adoption No. 12612*, *supra*, 353 Md. at 167. The trial court noted Dr. James's testimony that children exposed to intimate partner violence are at risk for demonstrating negative behaviors in the future. In short, there is no evidence that the trial court improperly prioritized Family Law § 9-101.1. Merely considering a factor that is a mandatory consideration does not equate to prioritization. Rather, the trial court properly considered and analyzed all factors, including that of abuse against the parent of a minor child.

**II.     The trial court did not abuse its discretion in awarding primary physical custody and sole legal custody to Mother after considering all factors relevant to the best interests of the minor children.**

Next, we consider Father's contentions that the trial court abused its discretion in its custody determination. Father asserts that the trial court erred by inappropriately limiting Father's access to the minor children and failing to properly consider the best interests of the children. As we shall explain, the trial court properly considered the relevant factors and set forth its detailed findings with respect to each factor when determining the appropriate custody and visitation schedule between each party and the minor children.

14

It is undisputed that there are numerous factors the court must consider and weigh in its custody determination. *Sanders*, *supra*, 38 Md. App. at 420. The criteria for judicial determination includes, but is not limited to: (1) fitness of the parents; (2) character and reputation of the parties; (3) desire of the natural parents and agreement between the parties; (4) potentiality of maintaining natural family relations; (5) preference of the child; (6) material opportunities affecting the future life of the child; (7) age, health, and sex of the child; (8) residences of parents and opportunity of visitation; (9) length of separation from natural parents; and (10) prior voluntary abandonment or surrender. *Id.* at 420 (internal citations omitted).

In this case, the circuit court considered each of the factors and set forth, in detail, its reasoning and conclusions. With respect to the fitness of the parents, the trial court found that each parent loves and is committed to the minor children. The trial court noted that it was most impressed with Dr. James's reports from her home visits which indicated that both children, especially A., were very comfortable and happy with each parent. Indeed, several witnesses expressed to the court that both parents had positive interactions with the children.

The trial court considered the character and reputation of the parties, noting that Father was employed with the United States Secret Service until 2016. Father subsequently fell ill and is now pursuing full-time employment. The trial court noted that Mother is employed in her family's business and works part-time so that she can still care for the minor children. Critically, the trial court noted that the parties' mental health issues are significant and have an impact on their fitness as parents.

15

The trial court found the testimony of Mother to be "extremely credible," and found it clear that Mother had suffered incidents of abuse at the hands of Father. Indeed, the court commented that Mother's fear of Father was real and genuine. Specifically, the trial court noted that Mother testified over multiple days of trial, months apart. Despite the extended length of time between Mother's different days of testimony, the trial court noted that Mother's testimony regarding the abuse she suffered at Father's hands remained entirely consistent. Further, the court found that Father tended to be non-responsive to several questions presented at trial and was admonished several times for this behavior throughout the trial. The court commented that it viewed that behavior "as an attempt by [Father] to deflect any evidence that he perceives would portray him in a negative light." This behavior, the court noted, detracted from Father's overall credibility. Ultimately, the court agreed with Dr. James that Father was the primary aggressor and exercised coercive control over Mother.

Notably, the trial court agreed with Dr. James's testimony that Mother's suicidal ideations were a direct result of Father's abuse. Mother's therapy and practices of distancing herself from Father persuaded the court to find that Mother is not a danger to the children. The trial court noted that Father attended an Abuser Intervention Program and that it took Father one year to complete the program. The length of time caused the court to question Father's sincerity in accepting his role as the aggressor in connection with the violence towards Mother. Further, the court heard testimony from Dr. Gibson which provided that Father denied any existence of domestic violence in the parties' marriage.

The court commented on the express wishes of the parties and the prior agreements between them. Father requested joint legal custody and shared physical custody. In contrast, Mother requested sole legal custody and primary physical custody. The previous agreement between the parties and the trial court resulted in Father having supervised visits with the children every other weekend from Saturday at 9:00 a.m. until Sunday at 5:00 p.m. Additionally, Father had two visits during the week. Father requested that his access be gradually increased until it reached 50/50 and further requested that his visits be unsupervised. Mother requested that the current access schedule continue, with visits during the week being decreased to one night during the school year. Mother also requested that visits remain supervised.

The circuit court addressed the ability of the parties to maintain natural family relations. The court noted that both parties have very close ties to their respective extended families. Particularly, the court noted that Mother resides with the children's maternal grandparents and that the children's paternal grandparents reside in Southern Maryland. Further, the paternal grandparents supervise Father's visits with the children. In discussing the children's preference, the trial court noted that the children are too young to express a preference and that asking them to do so would not be in their best interest.

The trial court noted that both parents are able to work full time and can provide the children with the necessary material opportunities they would need as they mature. The court considered that the children were ages seven and five at the time of trial. Both children were, and still are, in good health. A. is female and W. is male. Further, the trial court noted that the parties both live in Harford County, Maryland and are within close

17

proximity to each other so as to allow for visits with both parents. Notably, the court determined that separation from natural parents was not an important factor because the children were not separated from the parents during any time. The circuit court commented that neither parent had ever abandoned or surrendered the minor children.

It is well established that the following factors ("the *Taylor* factors") are considered by a court when determining an appropriate custody arrangement and whether the parents are able to share custody: (1) capacity of parents to communicate and to reach shared decisions affecting child's welfare; (2) willingness of parents to share custody; (3) fitness of parents; (4) relationship established between child and each parent; (5) preference of child; (6) potential disruption of child's social and school life; (7) geographic proximity of parental homes; (8) demands of parental employment; (9) age and number of children; (10) sincerity of parents' request; (11) financial status of parents; (12) impact on state or federal assistance; and (13) benefit to parents. *Taylor*, *supra*, 306 Md. at 304–11. Not all the factors are necessarily weighed equally; rather, it is a subjective determination. *See id.* at 303 ("Formula or computer solutions in child custody matters are impossible because of the unique character of each case, and the subjective nature of the evaluations and decisions that must be made."). The capacity of the parents to communicate and reach shared decisions is "the most important factor in the determination of whether an award of joint legal custody is appropriate." *Id.* at 304.

Notably, the trial court commented that it was concerned with the parties' ability to communicate and reach shared decisions. Critically, the trial court determined that the parties had a very volatile relationship due to Father's coercive control over Mother. The

18

trial court determined that the parties were not on equal footing regarding effective communication. Importantly, the court noted that the parties had been separated for three years and could not yet communicate effectively. Further, the trial court determined that Father would be unable to listen to and accept Mother's opinions regarding the welfare of the children.

The trial court found that Father expressed a willingness to share custody, but the court doubted the sincerity of the request due to Father's portrayal of Mother throughout the trial. The court noted that Mother desired sole custody. As discussed, *supra*, the court determined that the parents are not able to share custody of the children. When discussing the parties' relationships with the children, the trial court noted that the children have established a good, loving relationship with each parent. Nevertheless, the trial court expressed concern over the past behavior of Father encouraging A. to strike both Mother and W. Indeed, the court noted that this behavior took place prior to the separation and no evidence was presented that it would continue.

The trial court noted that A. attends a private school and W. is expected to attend the same school when he reaches the proper age. The court commented that the children's social lives are limited and deemed this factor insignificant. As discussed, *supra*, the trial court determined that both parents live in Harford County and the geographic proximity of the parents makes it easy for the parties to share custody and allow for visitation with either parent. The trial court also determined that both parties are financially stable. Finally, the trial court noted that Father would benefit from having joint custody, but that Mother would not benefit from joint custody. This situation, the court noted, would require Mother to

have more interaction with Father and would be "inadvisable given the history of domestic violence and abuse."

Indeed, the factors identified in *Sanders* and *Taylor* are not exhaustive lists that the trial court is limited to when considering a custody determination. *Taylor*, *supra*, 306 Md. at 311. Therefore, the trial court is permitted to consider "other factors" it deems necessary. *Id.* Accordingly, the trial court considered the effect of Family Law § 9-101.1 on its custody determination. The trial court determined that there was evidence of spousal abuse committed by Father against Mother. Because of this determination, the trial court had to "make arrangements that best protect [Mother] and the children."

After setting forth its findings with respect to each factor, the circuit court issued its ruling with respect to custody. As discussed *supra*, the circuit court awarded Mother primary physical custody, with Father having access to the children on alternate weekends on Saturday through Sunday. Further, the trial court awarded Father one four-hour visit during the week when school is in session and two four-hour visits during the week when school is not in session. The trial court lifted the requirement for supervision of Father's visits with the minor children. The trial court also awarded Mother sole legal custody of the minor children.

Having reviewed the record and having summarized the circuit court's factual findings as well as the circuit court's reasonings and conclusions, we hold that the circuit court did not err in its custody determination. Contrary to Father's assertion, the circuit court did not inappropriately limit Father's visitation with his children. Rather, as recounted above, the circuit court determined that due to the history of abuse by Father

20

against Mother, Mother needed to have frequent access with the children to ensure their safety. Although the circuit court expressed concern about Mother's mental health, the court found that those concerns were properly addressed by her devotion to therapy and limiting her contact with her abuser, Father.

Furthermore, the court considered the parties' ability to communicate amicably within the context of its best interests analysis. Father's assertion that the circuit court failed to make a finding with respect to the best interests of the children is plainly without merit. As discussed in detail *supra*, the circuit court considered each of the *Taylor* factors and properly set forth its findings and reasoning in its custody determination. The circuit court did not simply adopt the recommendation of any party or of the custody evaluator. Rather, the circuit court explained the reasoning behind its decision to continue the current visitation schedule so that Mother could ensure her children's safety when necessary. Finally, the circuit court did not err or ignore the best interests of the minor children by awarding sole legal custody to Mother. Rather, the trial court considered the ability of the parties to communicate and Father's abuse of Mother pursuant to Family Law § 9-101.1(c). These considerations of Mother's safety, coupled with the best interests of the children and their own safety, were clearly significant in the trial court's decision to award Mother sole legal custody.

In this case, the circuit court engaged in precisely the type of analysis we have explained is appropriate when evaluating the best interests of a child in the context of a custody determination. Accordingly, we reject Father's assertion that the circuit court erred and/or abused its discretion with respect to its custody determination.

**III. The trial court did not abuse its discretion by refusing to allow Father's witness to testify telephonically when the witness was not an essential participant in the case and allowing such testimony would result in substantial prejudice to Mother.**

Finally, we will consider Father's argument that the trial court abused its discretion by refusing to allow a rebuttal witness to testify via telephone. Father contends that the testimony of his neighbor, N.S., was essential to the proceedings due to Father's contention relating to physical aggression by Mother. Father further argues that N.S.'s credibility was not critical to the outcome of the case and, therefore, Mother did not require a face-to-face cross examination.[9] Mother argues that N.S. was not an essential participant to the custody hearing, there was no evidence presented of N.S.'s disability, and that allowing N.S. to testify telephonically would cause her substantial prejudice. We agree with Mother.

Remote electronic participation in an evidentiary proceeding, such as the trial in the instant case, is governed by Maryland Rule 2-803.[10] Maryland Rule 2-803 provides that "a court, on motion or on its own initiative, may permit" a participant to "participate in an evidentiary proceeding by means of remote electronic participation" either with the consent

---

[9] At trial, Father, through his previous counsel, argued that Maryland Rule 2-513 controlled and attempted to argue that N.S.'s telephonic testimony was admissible pursuant to the elements of this Rule. Critically, Maryland Rule 2-513 was repealed effective July 1, 2018 and was replaced with Maryland Rule 2-803. Both parties argue the application of Maryland Rule 2-803 in their briefs and during oral argument.

[10] A "non-evidentiary proceeding" is a judicial proceeding where neither testimony, nor documentary or physical evidence will be presented. Md. Rule 2-801(a). Maryland Rule 2-802 provides the rules for a trial court to follow in such a proceeding. Here, at trial, testimony and evidence was presented over a period of eight days. The trial was clearly an evidentiary proceeding and, therefore, Maryland Rule 2-803 governs a witness's ability to testify by means of remote electronic participation.

of all the parties or with compliance with subsection (c) of the Rule. Md. Rule 2-803(a).[11]

Maryland Rule 2-803(c) provides:

> (c) **Absence of Consent; Required Findings.** In the absence of consent by all parties, a court may exercise the authority under subsection (a) only upon findings that:
>
> (1) participation by remote means is authorized by statute; or
>
> (2) the participant is an essential participant in the proceeding or conference; and
>
>> (A) by reason of illness, disability, risk to the participant or to the others, or other good cause, the participant is unable, without significant hardship to a party or the participant, to be physically present at the place where the proceeding is to be conducted; and
>>
>> (B) permitting the participant to participate by remote electronic means will not cause substantial prejudice to any party or adversely affect the fairness of the proceeding.[12]

Md. Rule 2-803(c) (emphasis in original). In other words, there are three considerations the trial court must consider when determining whether to allow a participant to testify via telephone when the parties do not consent: (1) whether the witness was an essential participant in the hearing; (2) whether the participant was unable to be physically present at the hearing without significant hardship to her; and (3) whether permitting the witness

---

[11] It is undisputed that Mother did not consent to N.S.'s testifying by use of remote electronic participation. Therefore, N.S.'s participation was governed by Maryland Rule 2-803(c).

[12] The parties do not dispute that there is no statute authorizing the remote electronic participation of N.S.

23

to participate by remote electronic means would not cause substantial prejudice to a party or adversely affect the fairness of the proceeding. *See* Md. Rule 2-803(c).

First, we consider whether N.S. was an essential participant to the custody hearing. Father contends that N.S.'s testimony was essential because she would have testified that she heard the physical abuse by Mother towards Father and the minor children. Mother argues that N.S. was not an essential participant because her testimony would have offered little substantive information. We agree with Mother.

The trial court had already heard many examples from Father and his witnesses of alleged examples of Mother being abusive. Indeed, the trial court did not find this information credible. N.S. was only a neighbor to the parties during a time before their separation. Her testimony was unlikely to contradict the voluminous amount of testimony from other witnesses, including Dr. James, an expert witness. Further, Father's counsel proffered that N.S. would testify regarding an incident where Father asked N.S. to listen through the shared wall after he told her about an incident of Mother's abuse to the minor children. In our view, there is no evidence that N.S. was an essential participant to the custody proceeding.

The second element we consider regarding Maryland Rule 2-803(c) is whether N.S. was unable to be physically present at the hearing without significant hardship to her. Father argues that N.S. had just had back surgery which rendered her unable to drive to the court and to sit and testify at the proceeding. Further, Father offered that N.S.'s autistic son was home sick with the flu and that she could not leave him at home without her.

24

Mother contends that no evidence was offered to prove this physical condition and, therefore, N.S. was able to attend the hearing. We agree with Father.

While there was no testimony or evidence offered at trial that N.S. was physically unable to attend the hearing, Father was also not given the opportunity to do so. Notably, Father's counsel proffered that N.S.'s doctor was willing to provide a doctor's note detailing her condition. The trial court ruled that N.S. would not be allowed to testify via remote participation based on the other elements of Maryland Rule 2-803(c). Therefore, the lack of evidence of N.S.'s physical condition is not relevant because no opportunity was given to Father to prove such a condition.

Finally, we turn to the third element of Maryland Rule 2-803(c) which requires that remote electronic participation by a witness not substantially prejudice a party or adversely affect a proceeding. Father argues that N.S. was not an expert witness or a party, and, therefore, her demeanor and credibility were not important. Additionally, Father contends that Mother's counsel would have ample opportunity to cross-examine N.S. via the telephone. Mother argues that N.S.'s credibility was certainly relevant due to the nature of the statements she would be making in her testimony regarding Mother's behavior. We agree with Mother.

Father cites *In re Adriana T.*, 208 Md. App. 545 (2012) to support his contention that N.S. was an essential participant to the custody hearing and should have been permitted to testify via remote electronic participation. In that case, we held that a trial court's decision to allow a social worker to testify via telephone was not an abuse of discretion because she was a "disinterested party" who only testified to the minor child's "general

25

welfare." *Id.* at 563. Further, we explained that the witness's "demeanor and credibility were not likely to be critical to the outcome of the proceedings, to the extent that her physical presence was required." *Id.* Father's reliance on this case is misplaced.

First, N.S. is not a disinterested party like the social worker in *In re Adriana T.* because her testimony was being offered to prove disparaging behavior of Mother. *See id.* Accordingly, N.S.'s demeanor and credibility were likely to be important to the hearing so that the trial court could weigh the evidence presented before it. *See id.* Further, at the time we decided *In re Adriana T.*, Maryland Rule 2-513 governed the standard for remote electronic participation. While the two Rules are similar, they are not identical.[13] Accordingly, this Court's analysis in *In re Adriana T.* is inapplicable to the trial court's consideration at the telephonic testimony of N.S. In our view, the trial court's denial of N.S.'s remote electronic participation did not constitute an abuse of discretion.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[13] Indeed, Maryland Rule 2-513 contained no requirement that the proposed witness be an "essential participant" to the proceedings. *Compare* Md. Rule 2-513(e)-(f) *with* Md. Rule 2-803(c)(2). Further, Maryland Rule 2-803(c)(2)(B) requires that a witness's participation not "adversely affect the fairness of a proceeding." Maryland Rule 2-513 did not have such a requirement.